### In the Matter of the Petition of JAMES L. BARCLAY to vacate an Assessment.

The provision of the act " to alter the map or plan of certain portions of the city of New York" (Chap. 697, Laws of 1867), which authorizes the payment of damages caused by the closing of " any street, avenue or road laid out on the map of the city of New York within the district specified," was not confined to the streets and avenues laid out by commissioners under the act of 1807 (Chap. 115, Laws of 1807), but included any road exhibited upon the map filed by said commissioners.

Accordingly *held*, that the owners of property fronting on the old " Bloomingdale road" were entitled to compensation for the closing thereof.

Also *held*, that by incorporating into said act of 1867 the provisions of the act of 1852 (§ 3, chap. 52, Laws of 1852), providing for the payment of damages by assessment upon the property benefited, it was the intention of the legislature to make the damages caused by the closing of said road payable by assessment, as so provided ; and that, therefore an assessment for that purpose was valid.

(Argued May 30, 1882; decided March 6, 1883.)

APPEAL from order of the General Term of the Supreme Court, in the first judicial department, made April 10, 1882, which reversed an order of Special Term, vacating an assessment upon certain lots of the petitioner in the city of New York

for closing " Bloomingdale road," and which denied the prayer of the petitioner.

The road was closed by the commissioners of Central park under chapter 697, Laws of 1867, and the damages to the owners of land on said road were assessed upon the property benefited.

*John C. Shaw* for appellant. Without some statutory authority to levy an assessment for the reimbursemont of the city, the assessment is clearly void. (Dillon on Mun. Corp., § 605 and note ; *Sharp* v. *Speir*, 4 Hill, 76.) Power to levy an assessment cannot be inferred from legislative authority permitting certain improvements to be made or liabilities to be created. (Dillon on Mun. Corp. 606 and note ; *Wright* v. *Chicago*, 20 Ill. 522 ; *Columbia* v. *Hunt*, 5 Rich. [*S. C.*] 550 ; *Chicago* v. *Wright*, 32 Ill. 192 ; *Annapolis* v. *Harwood*, 32 Ind. 471 ; *Fairfield* v. *Radcliff*, 20 Iowa, 396.) The absence of any specific directions to levy an assessment is a clear legislative intention that the damage should be a public charge, and not a local burden. (*Matter of Robbins*, 82 N. Y. 131, 140 ; Laws of 1818, chap. 213, p. 1217, Valentine's Laws.) As the Bloomingdale road was not laid out on the map of the city, no right attached to the owners of property on it to receive any damages.. (*Matter of Em. Ind. Svgs. B'k*, 75 N. Y. 388 ; *Matter of Deering*, 85 id. 1 ; Valentine's Laws, 807 ; chap. 223 of 1838, § 3 ; Sedgwick on Const., etc., 200.) The rule or principle upon which an assessment is levied, especially where it is impossible to see that any bene-fit can come to the party objecting, may always be inquired into. (*Longley* v. *City of Hudson*, 4 T. & C. 353 ; *Matter of P. E. School*, 75 N. Y. 326.)

*James A. Deering* for respondent. The board of assessors had jurisdiction to assess the loss and damage sustained by the owners damaged on the parties or lands benefited. (Laws of 1867, chap. 697, § 3 ; Laws of 1852, chap. 52 ; *People, ex rel. Ward*, v. *Asten*, 49 How. 405 ; *S. C.*, 52 N. Y. 623 ; *People*,

*ex rel. Carleton,* v. *Asten,* 62 How. Pr. 140; *People, ex rel. Garrett,* v. *Assessors,* Sup. Ct. MSS.; *People, ex rel. Van Raden,* v. *Assessors,* id.; *People, ex rel. Doyle,* v. *Green,* 3 Hun, 755; *People, ex rel. Tyler,* v. *Green,* 64 N. Y. 606; Dillon on Municipal Corporations, § 500; *Comm.* v. *Cole,* 26 Penn. St. 209.) The words, "laid out upon the map of the city," are used in the act of 1867 synonymously or interchangeably with "laid out" and "heretofore laid out and established," and are to be interpreted as referring to streets and roads actually in existence or public use, or having in any way a public character. (*People, ex rel. Devlin,* v. *Asten,* 4 Hun, 461; 64 N. Y. 661; *People, ex rel. Deering,* v. *Asten,* Sup. Ct. MSS.) The assessors had power, and it was their duty to assess the loss and damage upon the property benefited by the closing. (Laws of 1867, chap. 697, §§ 3, 9; Laws of 1852, chap. 52, §§ 3, 4; Sedgwick on Statutes, 229; *Jones* v. *Dexter,* 8 Fla. 276; *Roeck* v. *Mayor, etc.,* 33 N. J. L.; *People, ex rel. Tyler,* v. *Green,* 64 N. Y. 606; *People, ex rel. Doyle,* v. *Asten,* 3 Hun, 755; *Callender* v. *Marsh,* 1 Pick. 418; *Radcliff* v. *Mayor,* 4 Comst. 195; *Brooklyn Park Comm'rs* v. *Armstrong,* 45 N. Y. 245; *Matter of Comm'rs,* 52 id. 137; Potter's Dwarris on Statutes, chap. 5; *U. S.* v. *New Orleans,* 98 U. S. 381; *Matter of Central Park Extension,* 16 Abb. 68; 7 Mass. 523; *McCullough* v. *Mayor,* 23 Wend. 458; *Lake* v. *Trustees,* 4 Denio, 520; *Beard* v. *Brooklyn,* 31 Barb. 142.) The assessment for benefits is but the manner of effecting the "payment" of the awards by those benefited by the closing of the road. (*Hammersley* v. *Mayor,* 56 N. Y. 536; *People* v. *Brooklyn,* 3 Hun, 597; *Hunt* v. *Utica,* 18 N. Y. 442.). If an assessment for benefit cannot be laid, as provided in the act of 1852, then there is no way of payment. (*People, ex rel. Doyle,* v. *Green,* 3 Hun, 755; *McCullough* v. *Mayor,* 23 Wend. 458.) By virtue of other laws, the assessor had authority to assess upon the property deemed benefited the loss and damage ascertained. (Laws of 1859, chap. 302, § 15 id., chap. 315; Laws of 1813, chap. 86, § 185; Laws of 1872, chap. 580, § 6.) The rule or

principle of estimating loss and damage, or assessing for bene-
fit, may always be inquired into.  The record is thereby ex-
plained and not contradicted.  (*Coutant* v. *Catlin*, 2 Sandf.
Ch. 485; *People* v. *County Ct.*, 55 N. Y. 604; *Matter of P.
E. School*, 75 id. 326; *Matter of One Hundred and Tenth
St.*, 54 How. 314; *De Peyster* v. *Male*, MSS., DANIELS, J.,
1881; 19 Wend. 679; 3 Kent's Com. 434; Laws of 1867,
chap. 697, § 3; *People, ex rel. Ward*, v. *Asten*, 49 How. 405;
2 Dillon on Mun. Corp., § 625 [3d ed.], 620.)  An assessment
for benefit is an exercise of the legislative power of taxation,
and such power in the legislature is omnipotent and not re-
viewable by the courts.  (Dillon on Mun. Corp., § 586; *Matter
of Church St.*, 49 Barb. 455.)

ANDREWS, Ch. J.  The most serious question in this case is
whether the owners of property fronting on the old Blooming-
dale road in the city of New York, are entitled under the act
of 1867 (Laws of 1867, chap. 697), to damages for the closing
of that road.  If they are not so entitled, the assessment on
the petitioner's lots, for the purpose of paying the awards, is
without foundation.

By the said act the commissioners of Central park were
empowered to lay out anew the district between Eighth
avenue and Hudson river, from Fifty-ninth to One Hun-
dred and Fifty-fifth street.  They were authorized to lay
out new streets and avenues, close old roads and streets, change
existing grades, etc., within that district.  Their action was to
be evidenced by making and filing maps which were to be con-
clusive both upon the corporation and the land-owners.  The
provision as to the closing streets, etc., was in the following
words: " And all streets, avenues, roads, public squares and
places and the grades thereof, heretofore laid out and estab-
lished within the district mentioned in the first section of this
act, which shall not be shown or retained in the maps to be
filed by the commissioners as before mentioned, shall from and
after the time of filing of said maps cease to be or remain pub-
lic streets, avenues, roads, squares or places, and the abutting

owners on such of said streets, avenues and roads, as have been opened or ceded, and as shall be abandoned or closed under the provisions of this act, shall become and be seized in fee-simple absolute therein, to the center line thereof, in front of his or their lands respectively," except, etc.    *   *   *   *
" All damage to any land, or to any building or other structure thereon, existing at the time of the passage of this act, on any street, avenue or road, *laid out on the map of the city of New York*, within the district specified in the first section of this act, by reason of closing such street, or altering the grade thereof, shall be ascertained and paid in the manner specified in sections three and four of an act entitled ' An act to make permanent the grades of the streets and avenues in the city of New York,' passed March 4, 1852." It will be observed that the provision in respect to the closing of all streets etc., not shown and retained on the new maps, applies to " all streets, avenues, roads, public squares and places,   *   *   *   *   *heretofore laid out and established* " within the district mentioned. This covers all roads whenever and however established, while the provision in respect to the ascertainment and payment of damages to lands and buildings on the streets, etc., closed, refers to lands, etc., on " any street, avenue or road *laid out on the map of the city of New York*," within the specified district, and hence it is argued with much force on the part of the appellant, that the true construction of the act is, that the commisers of the Central park were authorized to close any of the old roads, however established, which existed before the map of the city was made, and also any of the streets or avenues which had been laid out on that map by the commissioners appointed under the act of 1807, but that it was the intention of the legislature to allow *damages* only for the closing of the streets and avenues which had been laid out by the commissioners under the act of 1807, and which were designated on the map made by them in 1871, and generally known as the map of the city of New York, and referred to in the title of the act of 1867, as "the map or plan of the city of New York," and not to allow damages for the closing of the old roads not laid out

by the commissioners on the last named map.   It is further
claimed on the part of the appellant, that the Blomingdale road
is not laid out on the map of the city of New York, and con-
sequently that the act of 1867 does not authorize the award of
damages for the closing of that road.   The question thus pre-
sented involves an inquiry into matters of fact, as well as of
law, and it is necessary to advert to such facts bearing upon
the point at issue, as are established in this case.   It appears
beyond controversy that the Bloomingdale road had been for
more than a century before the passage of the act of 1867, an
open public highway, extending through the upper part of
Manhattan island.   The map filed in the year 1811, by the
commissioners appointed under the act of 1807, is placed be-
fore us in the form of a photographic copy, which is not dis-
puted and both parties refer to what it exhibits.   This we as-
sume is what is commonly understood and referred to in
numerous acts of the legislature, and especially in the act of
1867, as " the map of the city of New York."

On this map is delineated the projected system of streets
and avenues established by the commissioners, and which, in
contemplation of law, are streets and avenues laid out by such
commissioners:   They were thus laid out, however, as purely
anticipatory, to be opened only when needed, and without re-
gard to the then present requirements of the city, or to the
topographical character of the country, or the existing roads,
and only as a preparation for the great progress which the city
was expected to make, but which it was supposed (as appears
from the report of the commissioners) would be delayed a
much longer period than has actually intervened.   In making
this map the commissioners were bound, of course, to deline-
ate distinctly and by accurate surveys the streets and avenues
which they had planned or laid out.   These, for the most part,
did not conform to physical objects, but rested on the lines
the commissioners drew, and existed as streets and avenues
only on the maps they made.   Accordingly, in 1811 they com-
pleted the map of the upper part of the city of New York,
upon which map they delineated the streets and avenues pro-

jected by them, in solid lines, without regard to existing objects on the land. But at the same time, and on the same map, they delineated the then existing roads which passed through the territory they had laid out. These existing roads they very properly designated by dotted lines instead of solid lines, because it was intended that eventually, and when the time came, these old roads should yield to the general plan they had devised; but the existing roads thus designated were, nevertheless, part of the map. In fact these dotted lines delineated the real roads which were represented upon the map. Now, if in 1867 the legislature had intended to confine the right of compensation of the owners of land on streets and roads to owners of land fronting on the new streets and avenues thus theoretically laid out by the commissioners appointed under the act of 1807, they would have said so. They did not say so, neither was there any reason why they should. First, they did not say so, because the provision for damages in the act of 1867 applies to property "*on any street, avenue or road laid out on the map of the city of New York*," within the district, etc. This expression is not in terms confined to *streets and avenues*, which were the only things laid out by the commissioners of 1807, but also to "*roads*," and no "road" had been laid out by those commissioners, though several were designated on their map. The plan of those commissioners consisted of the division of the part of the island then placed under their jurisdiction for these purposes, into rectangular blocks, and these roads were country roads which intersected irregularly most of those blocks. When, therefore, the legislature, after all this action, authorized compensation for the closing of "roads," they must have had reference to something different from the projected blocks into which the commissioners had theoretically divided the upper part of the island. They used the very term "roads," which could not be applied to the intended division into rectangular blocks. Neither was the provision applied in terms to streets, avenues and roads *laid out by the commissioners*, but to streets, avenues and roads laid out upon the map. This language was applicable

to all streets, avenues and roads shown upon the map. Is there any reason why they should have confined the right of compensation to the owners of lands fronting on the new projected streets? These old roads had been open for many years. Buildings upon them had been erected and enjoyed upon the most ancient and well-established highways of the city of New York. The closing of these old roads actually took away access to the property of owners thereon. Why should they be deprived of their frontage without compensation? Because, it is said, sixty years before, viz.: in the year 1807, in anticipation of the progress of the city of New York, beyond any limit which could then be reasonably anticipated, the legislature caused that part of the city to be mapped out, theoretically without a cent of compensation to any party concerned, and without taking any property under the right of eminent domain. But this act, it is said, contemplated the eventual abolition of the old road, for it contained a provision that if any of the projected blocks should be completed by the opening of the streets and avenues by which such block was bounded, no opening should be allowed through it, and thus the Bloomingdale road might be blocked. But that unjust piece of legislation was checked as soon as it became of any importance, and in 1838 it was withdrawn, and the power to close the Bloomingdale road was vested in the corporation of the city of New York.

In view of all these enactments we think that the act of 1867 was intended to provide compensation for the closing of streets, etc., to the owners of lands, etc., on any street, avenue, or *road* laid out on the map of the city of New York, within the district named, and was not confined to lands situated on the streets and avenues which had been laid out by the commissioners, but extended to any road exhibited upon their map. The provision is not, in its language, confined to the streets and avenues laid out by the commissioners, as was the case in *Re Robbins* (82 N. Y. 131), but embraced the *roads* shown upon their map, whether laid out by them or others. They having laid out no *roads* but only rectangular blocks, the legislature,

in directing compensation to be made for the closing of *roads*, must have referred to the old roads, which antedated the work of the commissioners.

In support of these views, it is proper to advert to the fact that the ascertainment of awards for the damages caused by the closing of the old roads has been repeatedly enforced by *mandamus* in the courts of the first department, and that in one of the cases (*People, ex rel. Ward,* v. *Asten,* 62 N. Y. 623), the decision of the Court of Common Pleas, awarding a writ of *mandamus* to the assessors to ascertain the damages of the relator for the closing of the Bloomingdale road, was affirmed by this court. On reference to the points of the appellant on file here, it appears that one of them was that the Bloomingdale road was not laid out on the map of the city of New York. This point was not discussed or specifically passed upon in the case as reported. But it was in the case and must have been overruled to arrive at the conclusion reached by the court.

We are of opinion that the court at General Term rightfully held that the owners of property situate on the Bloomingdale road were entitled to compensation for the closing of that road.

The remaining points made by the appellant cannot, in our judgment, be sustained. The act of 1852 provides for the payment of damages caused by the alteration of grades, etc., and authorizes their payment by assessment on property benefited. We think it was the intention of the legislature, by incorporating that act into the act of 1867, to make the damages, caused by the closing of Bloomingdale road, payable by assessment on the owners of lands benefited.

None of the other objections urged seem to demand special comment.

The order should be affirmed.

All concur except RAPALLO, J., taking no part, and MILLER, J., not voting.

Order affirmed.