(28 App. Div. 143.)

## In re EAST 168TH ST.

### Appeal of MAYOR, ETC., OF CITY OF NEW YORK.

(Supreme Court, Appellate Division, First Department. April Term, 1898.)

.1. MUNICIPAL CORPORATIONS—CLOSING STREETS—PUBLIC PURPOSE.

'Laws 1895, c. 1006, provides for discontinuing and closing streets, avenues, etc., by the local authorities in cities of more than 1,250,000 inhabitants according to a uniform plan "to more effectually secure and preserve regularity and uniformity in the general and permanent plan of streets and avenues and public places therein, or where other public necessity, in the judgment of such local authorities, requires the discontinuance thereof," etc. Under this act they were authorized, in closing a street, to make assessments upon neighboring property benefited thereby to pay for the extinguishment of private easements of light, air, and access over land in the closed street, vested by the closing in individual ownership if the street were made by dedication, and in the city if acquired by condemnation proceedings; and, in case it was vested in the city, the owner of abutting property was given a pre-emptive right to purchase it within one year, unless needed for other public purposes. *Held*, that the closing of the street under such a plan is for a public purpose, and the fact that private ownership in its bed resulted, and provisions are made by the act by which the land can be utilized and rendered valuable, would not convert it into a private purpose.

2. SAME—ASSESSMENTS FOR BENEFITS OF CLOSING STREET—LEGALITY.

Assessments upon property actually benefited, being used for the extinguishment of easements, without which the street could not be effectually closed, are regarded as a payment of the costs and expenses of carrying out a public improvement; and the fact that the improvement incidentally results in a benefit to a private individual who gains title to land in the street does not render them unlawful, as a taking of private property for private use.

Ingraham, J., dissenting.

Appeal from special term, New York county.

In the matter of the application of the mayor, aldermen, and commonalty of the city of New York relative to acquiring title, wherever the same has not been heretofore acquired, to East 168th street (formerly Charles Place), although not yet named by proper authority, from River avenue to the Concourse, in the 23d ward of the city of New York, as the same has heretofore been laid out and designated, as a first-class street or road. From an order authorizing and directing commissioners of estimate and assessment to ascertain and determine the compensation due petitioners because of the closing of Gerard avenue, and to appraise the interest of the city in the land within the boundaries of Gerard avenue so closed, the mayor, aldermen, and commonalty appeal. Affirmed.

Argued before VAN BRUNT, P. J., and BARRETT, McLAUGHLIN, PATTERSON, and INGRAHAM, JJ.

John P. Dunn, for appellant.
James A. Deering, for respondents.

PATTERSON, J. This is an appeal by the mayor, etc., of the city of New York, from an order made at the special term, by which commissioners of estimate and assessment, appointed in the above-entitled proceeding, were authorized and directed to ascertain and determine

the compensation which should justly be made for the loss and damage to the petitioners (respondents) caused by the discontinuance and closing of a part of Gerard avenue, between 168th and 169th streets, in the city of New York, to wit, the closing of so much of that avenue as has been discontinued or closed, upon a map adopted by the board of street opening and improvement. The said commissioners of estimate and assessment were also authorized and directed "to further and separately appraise and state and report the value of the right, title and interest of the city of New York in and to the fee of the land remaining in the said Gerard avenue discontinued and closed as aforesaid in front of the said petitioners' lands, over and above such sum as they may assess for benefit on such parcel of land and of such taxes and assessments as may be a lien thereon at the time of their said estimate and assessment, as provided by chapter one thousand and six of the Laws of eighteen hundred and ninety-five." The proceeding entitled above was originally instituted to open, in accordance with law, 168th street, from River avenue to the Concourse, in the 23d ward of the city of New York. Commissioners of estimate and assessment were appointed, and they were proceeding with the performance of their duties at the time the respondents presented their petition to the court.

It appears that 168th street, as projected on the maps filed in the proceeding, intersects Gerard avenue. The respondents are owners of land fronting on that avenue, such frontage beginning at the intersection of the northerly line of the proposed 168th street with the easterly line of Gerard avenue, as the same was laid out by the commissioners of the Central Park on the 23d day of January, 1888, and extending in a general northeasterly direction 41 feet and 6 inches. The commissioner of street improvements for the 23d and 24th wards of the city of New York, acting under the provisions of chapter 545 of the Laws of 1890, which authorized the discontinuance or closing of any street, road, avenue, public square, or place, or any part of the same, within those wards, with the consent of the board of street opening and improvement, filed certain maps, some of them anterior to 1895. On the 12th of June, 1895, an act was passed by the legislature (chapter 1006, Laws 1895) entitled "An act to provide for discontinuing and closing streets, avenues, roads, highways, alleys, lanes and thoroughfares in cities of more than one million two hundred and fifty thousand inhabitants." That statute actually affected only the city of New York. On the 2d of November, 1895, the board of street opening, having statutory authority so to do, filed a map showing a plan of streets for a section of the 23d ward in the vicinity of the respondents' premises, upon which a certain part of Gerard avenue was closed, namely, that embraced within a line extended 13 feet and 11 inches westerly from the northeasterly corner of the respondents' property on 168th street, thence northerly 136.82 feet. It is a portion of the roadway of Gerard avenue, taken to form part of the block bounded by 168th and 169th streets and Walton avenue and Gerard avenue. That much of Gerard avenue became closed by the filing of the map, and thus the respondents' easements of light, air, and access to their Gerard avenue frontage were in legal effect

taken away. Under those circumstances, the respondents presented their petition to the court, claiming a right given by section 14 of chapter 1006 of the Laws of 1895 to intervene in the proceeding for the objects stated in the order, and that order was made in recognition of that asserted right.

It is enacted by section 14 of chapter 1006 of the Laws of 1895 that a proceeding for closing a street may be consolidated with one for opening a street. By that section it is provided that whenever local authorities institute a proceeding to open any street, etc., laid out upon a general or permanent plan of the city, or district thereof which shall be contiguous to or in the neighborhood of any lot or parcel of ground fronting on such street, etc., which they have discontinued or closed, and proceedings have not been had or completed to ascertain the damage caused by such discontinuance or closing, the court which has or shall appoint commissioners, etc., in respect to such opening, may at any time, upon the application of the chief law officer or counsel to the corporation of such city, or upon the application of any party or person interested in the land fronting upon the street, etc., so discontinued and closed, order and provide, if it shall appear to the said court to be expedient and proper, that the same commissioners of appraisal and estimate, etc., shall ascertain and determine the compensation which should justly be made for any loss and damage to the respective owners, lessees, parties, and persons respectively entitled in possession, reversion, or remainder unto, in, and to, or included in, any lands, tenements, hereditaments, premises, easements, rights, or interests taken, affected, or damaged by or in consequence of the discontinuance or closing of such street, etc., or such portion thereof as the court may direct and specify in said order; and the said commissioners, etc., shall thereupon make said estimate accordingly, and the proceedings to ascertain and determine the same shall be conducted and completed in accordance with the provisions of existing laws relative to the opening of the street or avenue for which the said commissioners were appointed, except that any parcel of land deemed to be benefited may be assessed to the extent provided for in section 6 of the said act, and the amount awarded for and by reason of such discontinuance or closing shall be included in the amount of the expenses to be assessed upon the property benefited in said proceeding. From and after the making and filing of the order of the court consolidating such proceedings, no further or other proceeding shall be taken relative to ascertaining or determining the compensation which should be made for such discontinuance or closing.

The act of 1895 provides a complete scheme for closing streets and avenues in the city of New York. It is provided by section 2 that, upon the filing of the map therein referred to, the streets, avenues, and roads shown thereon shall be the only lawful streets, etc., in that section of the city shown on said map, and all former streets, etc., theretofore laid out, dedicated, or established not shown thereon, and which are not then actually open or in public use, shall, from and after the filing of said map or plan, cease to be or remain for any purpose whatever a street, etc., and the owner or owners of the fee of the land or soil within the boundaries thereof may thereupon inclose,

use, and occupy the same as fully as if the same had not been laid out, dedicated, or established. But in all cases where any such street, etc., is at the time of the filing of such permanent map or plan actually open and in public use, such parts or portions thereof as are included within the boundaries of any square or plot of ground made by the intersection of any streets, avenues, or roads laid out by the local authorities upon the permanent map or plans shall ever after any one of the streets, avenues, or roads bounding such square or plot shall be opened, cease to be or remain for any purpose whatever a street, etc., and the owner in fee of the land or soil within the boundaries thereof may inclose, use, and occupy the same as fully as if the same had not been laid out, dedicated, established, or used. Section 6 of the act provides, among other things, for the estimate of compensation when it becomes necessary, and how that compensation is to be made. The commissioners are, upon testimony taken by them, to make a just and true estimate of the compensation which should justly be made for any loss and damage to the respective owners, lessees, parties, and persons respectively entitled in possession, reversion, or remainder unto or interested in any land, tenements, hereditaments, premises, easements, rights, or interest taken, affected, damaged, extinguished, or destroyed by or in consequence of the discontinuance or closing of any street, etc., and also of the benefit and advantage to the land, tenements, hereditaments, and premises which shall be benefited by such discontinuance or closing, and to report thereon to the court without unnecessary delay. The same section further provides that the damages which may be allowed by the commissioners, and all expenses incurred in the proceedings to ascertain said damages, shall be assessed by the said commissioners upon the property benefited thereby to the extent of the benefit so received in the same manner as assessments for acquiring land for streets, etc., are assessed as provided by existing laws relating thereto in such city. But the said commissioners of estimate and assessment shall, to the extent they deem the same to be benefited thereby, notwithstanding the valuation of the same for the purposes of taxation, assess the parcel or parcels lying and being within the boundaries of the street, etc., which shall be discontinued or be closed as aforesaid, and shall separately appraise and state in their report the amount so assessed separately in respect to each part or parcel of the said street, etc., so discontinued and closed in front of or adjoining the separate parcels of land as the same fronted thereon at the time of such closing; and they shall also further separately appraise and state and report the valuation of the right, title, and interest of such city of, in, and to the fee of the land remaining in such discontinued or closed street, etc., upon the discontinuance and closing thereof over and above such sum as they may assess for benefit on such parcel of land, and of such taxes and assessments as may be a lien thereon at the time of their estimate and assessment. It is provided by section 11 of the act, among other things, that the damages awarded by the commissioners of estimate and assessment, and all costs and expenses which may be taxed in the proceeding, and all expenses of any department or bureau of such city which may be charged with the conduct of such

proceedings, shall be paid by such city to the respective persons, department, or bureau mentioned or referred to in the report of the commissioners. Such damages, costs, and expenses shall be paid from the fund provided for by existing laws for the opening of streets and parks in such cities, and in the case of the city of New York from the fund for street and park openings, in the manner now provided for by existing laws. Whenever the amount of damages awarded in any report shall exceed the balance remaining of such fund first to be resorted to, the chief financial officer or comptroller of the city is authorized to raise by the issue and sale of revenue bonds such amount as shall be necessary to pay such damages, etc. Section 12 provides that all confirmed assessments for benefits shall, from and after the entry of the order confirming the same, be a lien upon the lands, etc., assessed, and shall be collectible and enforceable in the manner provided by existing laws for the collection and enforcement of assessments for street openings. The sixteenth section of the act provides for the release and conveyance by the city, without compensation, or upon such terms as may appear to the authorities to be just and equitable, to the owner of any part of the closed street, etc., which had been conveyed or ceded to the city without compensation, in consideration of such owner releasing all claims for damages against the city, and for the making of agreements with owners as to the cession of lands in lieu of lands in the streets, and also as to the compensation for the value of lands. Section 17 provides that whenever the city shall have any right, title, or interest in and to the lands lying within the street, etc., so discontinued and closed, and the local authorities shall determine that said parcel of land, or any part thereof, shall not be required for other public use, the owners of lands fronting on such street, etc., so discontinued and closed, may acquire all the right, title, and interest of the city in and to such or any parcel of land lying within the lines of any such street, etc., upon payment to the comptroller or chief financial officer of said city of the amount estimated and allowed by the said commissioners of estimate and assessment as the value of such right, title, and interest, and also of the amount due on account of all assessments and taxes confirmed against the same or a lien thereon, or so much thereon as the local authorities may deem just and equitable; provided, however, that such person shall in writing apply to the comptroller or chief financial officer of such city for said grant or conveyance within one year after the date of the confirmation of the report of the commissioners of estimate and assessment as aforesaid; and, in case such application shall be so made, the comptroller or chief financial officer shall cause to be prepared and delivered to said person or persons a conveyance or grant of the right, title, and interest in and to such parcel of land in such form as shall be approved by the counsel to the corporation, etc. But, in case no application shall be made as aforesaid by such person or owner of the adjacent property, the right, title, and interest of such city shall be subject to sale, grant, disposal, or use to any person whomsoever, in such manner and upon such terms as the local authorities may thereafter designate, provide, and approve.

The foregoing is an abstract of all the provisions of the act of 1895

it is material to consider in disposing of the questions arising on this appeal, and those questions relate to the constitutionality of the act. Do any of the provisions of that act authorize the taking of private property for a private use, or is the power of taxation allowed thereby to be exercised only for the purpose of discharging servitudes upon property owned by private individuals, or by the city of New York, for the corporate or other purposes of that city? The general object and scope of the legislation in question is entirely legitimate. Proceedings for the closing of streets were authorized by law long prior to the passage of the act of 1895, and there can be no valid objection to a general scheme of combining such a proceeding with one for the opening of a street where the conditions are such as to render it more economical and more expeditious to do so.

The objections urged to the act under consideration relate to the methods adopted by the legislature to accomplish its objects, to the liabilities imposed, and the consequences brought about by the methods thus adopted. Closing a street is the reverse of opening one. In the latter case, private property is taken for a plain public use. Under condemnation proceedings the owner of the property thus taken for the public use is compensated, and the city acquires in trust for the public the fee of the land included within the boundaries of the street. On closing a street, the public right in the street ceases, and the title to and ownership of the fee of the land within the lines of the street subject to any private easements therein becomes vested in the grantor or his heirs if the street were dedicated, or in the city if the land were taken by condemnation proceedings. It is this situation which gives rise to the contention of the city that, upon the closing of the street, that which was the roadway becomes private property, and that, when assessments are made upon neighboring property to pay for the extinguishment of private easements over the land thus closed and vested in individual ownership, such assessments are made for a private use, because the extinguishment of the easements is, it is assumed, for the exclusive benefit of the land in the street upon which those private easements rested as servitudes. That such easements are property, and that they cannot be taken without compensation, is well settled (Story v. Railroad Co., 90 N. Y. 122; Lahr v. Railroad Co., 104 N. Y. 268, 10 N. E. 528); and it is also well settled that upon the closing of a street in the city of New York, prior to the act of 1895, the public easement in the street alone was extinguished (Holloway v. Delano, 139 N. Y. 390, 34 N. E. 1047, 1052; Holloway v. Southmayd, 139 N. Y. 410, 34 N. E. 1047, 1052). By the closing of the streets, under the decisions in the two cases last cited, the city of New York did not ipso facto acquire an absolute fee, freed from all easements, in the land in Gerard avenue. In order to acquire such an absolute and untrammeled fee, it is necessary for the city to pay the value of the easements destroyed by the closing of the street. We have had occasion to say more than once that we have neither the disposition nor intention to criticise the decision of the court of appeals in the Holloway Cases. Argument is from time to time persistently made before us that those decisions are in conflict with a long line of an-

tecedent authority to the contrary of what was held by the court of last resort in those cases; and we have to repeat that it is for that court to revise its judgment, and, until that is done, we are bound to follow those cases and the rule therein laid down. But that rule does not control in the case at bar. The act of 1895 had for its object, among other things, the extinguishment of the private easements; and it is undoubtedly one of the effects of that legislation that the title to the land in a street closed under that act becomes vested in private ownership in an individual grantor, if the street were made by dedication, or, in the city of New York, if it were opened by statutory proceedings for that purpose; and such ownership is in the entirety of the title, and is to be liberated from the servitude of easements appurtenant to abutting property. If the object and intent of the statute are exclusively to thus vest the title free from incumbrances in individual ownership, then it is very plain that it would be incompetent to charge upon neighboring property the expense of getting in and extinguishing such easements merely to enhance the value of the property thus held in individual ownership in the closed street, for that would be the taking of private property of some individuals for the private use of other individuals or of the city, and the law might justly be condemned as one imposing upon the owners of property the burden of acquiring the easements where the whole purpose of the imposition of the burden is to benefit a private owner.

The inquiry therefore is as follows, viz.: Is the object sought to be attained by the act only to extinguish private easements appurtenant to property after a street has been discontinued for the benefit of the individual owner of the land within the boundary of the street thus closed? The precise situation of this particular case in this aspect is that the title to the land no longer required for street purposes is transferred to the original owner by force of the statute, subject to the easement; that easement is to be extinguished, and compensation made for it; the abutting owner is given a pre-emptive right to purchase that land within a year upon a fixed valuation, provided the local authorities shall determine that such parcel of land, or any part thereof, shall not be required for any other public use; and, if the abutting owner does not exercise his pre-emptive privilege within that year, the right, title, and interest of the city is subject to sale, grant, disposal, or use to any person whomsoever, in such manner and upon such terms as the local authorities of such city may designate, provide, and approve. Those provisions undoubtedly relate to the acquisition of private titles as a part of the general scheme of the act. The city of New York, as owner of the land, may use it for corporate purposes, or, unless it is required for such use, it may sell or dispose of it in the same way as an individual owner might do. But all that does not, in view of the main purpose to be accomplished by the act of 1895, make the exclusive purpose of that legislation a private one, although private ownership is the ultimate result of those provisions of the act. The underlying or fundamental purpose of the act is a public one. As declared in its first section, it is "to more effectually secure and pre-

serve regularity and uniformity in the general and permanent plan of streets and avenues and public places therein, or where other public necessity, in the judgment of such local authorities, requires the discontinuance thereof," etc.  What public necessity may be said to be involved?  Manifestly, the advantage of a regular and harmonious street system, which is devised not only with reference to light and air to be furnished to buildings to be erected on such streets, but also with reference to drainage and sewerage, and the grading of the surface of the streets in particular localities, matters pertaining to public health and convenience, and also with reference to accessibility of particular properties.  These are not merely imaginary, but very substantial, public advantages.  The closing of streets as a consequence of the adoption of a uniform plan, such as was required by the act of 1895 and as was made in this case, is therefore a public purpose.  The fact that, as a consequence of closing the street, private ownership in its bed results, and that provisions are made by the law by which the land can be utilized and rendered valuable, does not convert the main purpose of the legislation from a public to a private one.

As was remarked in Meyer v. Village of Teutopolis, 131 Ill. 552, 23 N. E. 651:

"Nor can it be said that the validity of the proceedings by which a street is vacated is at all affected by the fact that the land embraced within the street thereby becomes private property.  Nor is it material whether private ownership results from the rule that, upon the discontinuance of an easement in a public highway, the freehold or soil reverts to the owner of the adjoining land, or that such ownership is acquired by subsequent conveyance from the municipality.  Nor does it seem material that the vacation is made with the view or intention of vesting the adjoining proprietors with the ownership of the land embraced within the street.  That merely goes to the motive by which the act of vacation is performed, and in that, as in all legislative acts, the motives by which the legislative body is actuated are immaterial, and cannot be inquired into."

The closing of the street thus being a public purpose, in order to make that an actual closing it is necessary that the easements of the abutting owners should be extinguished, for otherwise the street could not be effectually closed.  The objection is then made to the provisions of the act of 1895 which relate to the assessment of neighboring property to pay for the extinguishment of such easements.  The act requires that the commissioners shall assess the property benefited, including the city's property in the closed street.  In the case before us the inquiry relates only to land of the city.  As the assessment is only levied for carrying out a public purpose in connection with closing a street, such assessment upon property actually benefited by its imposition cannot be said to be unlawful.  The question of what property is benefited is a question of fact for the determination of the commissioners.  It is not to be assumed that they will make any assessment upon property which is not as matter of fact benefited; and, if the benefit attaches exclusively to the land of the city, the commissioners will undoubtedly confine their assessment for benefit to the land.  But there may be conditions which would make the closing of a portion of this street and the

straightening of the line of the street beneficial to other property owners than the city, and it is only that benefit for which that other property can be taxed by assessment to pay for the extinguishment of easements. If we leave out of view the public purpose, the argument against the validity of this act in the respect now under consideration proceeds very directly to its conclusion; but that public purpose being shown, if it involves a private benefit to particular landowners, there can be no more objection to their bearing their proportionate share of the cost and expense of securing that benefit than there can be to their bearing their share of the burden of opening a public street; and the money paid as damages for the extinguishment of the easements of the abutting owners on the closed street is a part of the cost and expense of carrying out the public improvement, which consists partly in the closing of that street in accordance with the general plan the legislature has authorized to be adopted for that public improvement. .

But the question is presented in another view. It is urged that the provisions of the statute under consideration are invalid, because adjoining property owners are required to pay the sum necessary to relieve the private owners of the land within the boundaries of the closed street from the private easements appurtenant to that land when no benefit accrues to such neighboring property owners; and it is claimed that this is in excess of the power of the legislature with reference to taxation. The imposition of local assessments for benefits is unquestionably an exercise of the power of taxation. People v. Mayor of Brooklyn, 4 N. Y. 419; Litchfield v. Vernon, 41 N. Y. 123; In re Van Antwerp, 56 N. Y. 261. If, in the case now before us, the necessary result of the provision of the law under consideration were to compel property owners not benefited to pay money to enable the city to acquire property which it was not to hold publici juris, then there would be the invalid exercise of the power of taxation; but, in the first place, the argument assumes again that the property of the adjoining owners is not and cannot be in any way benefited by the closing of this street and the extinguishment of the easements of the abutting owners. There may be benefits to such owners, the direct result of the straightening of the line of Gerard avenue and the closing up of so much thereof as is included within the irregular geometrical figure shown upon the commissioners' map. It cannot be assumed as judicially beyond controversy that no possible benefit ascertainable and reducible to a money valuation can accrue to the neighboring property owners by reason of the closing of so much of the street. As said before, that becomes a question of fact for the commissioners, and it is not to be assumed that they will arbitrarily and unlawfully exercise the power with which they are invested. If no property is actually benefited but that of the city, it alone must bear the expense.

The prime object of the statute is the closing of the street. The roadway discontinued in use as a public highway reverts to the owner of the soil; but the dominant purpose of the act cannot practically be attained until the easements of the abutting owner are destroyed or discharged by making compensation. That compensation

is "damages," within the meaning of the act. Its payment is absolutely necessary. Ultimately it is to be paid by local assessment. Incidentally it relieves the land in the street acquired in private ownership; but mainly and inherently it is damages incurred in carrying out the public improvement, and the assessments are to the permitted extent levied for a public purpose. Assessments placed upon neighboring property to pay for the damages caused by closing a street have been declared to be in pursuance of a valid exercise of power. In re Barclay, 91 N. Y. 430. See, also, Litchfield v. Vernon, 41 N. Y. 123. I therefore am of the opinion that neither of the objections taken to the validity of the act of 1895 is tenable, and that the order appealed from should be affirmed, with costs.

Order affirmed, with costs. All concur, except INGRAHAM, J., dissenting.