In the Matter of the Application of THE MAYOR, ALDERMEN AND COMMONALTY OF THE CITY OF NEW YORK, Relative to Acquiring Title to Morris Avenue, from Tremont Avenue to Park View Terrace.

THEODORE SATTLER and LYDIA SATTLER, Appellants ; THE MAYOR, ALDERMEN AND COMMONALTY OF THE CITY OF NEW YORK, Respondent.

*Discontinuance of a street in New York city by the filing of a map — right of abutting property owners to compensation.*

The filing, by the municipal authorities of the city of New York, of a map or plan of the twenty-third and twenty-fourth wards, under chapter 545 of the Laws of 1890, operated, under section 2 of chapter 1006 of the Laws of 1895, to discontinue an existing street traced upon said map to show its relation to the new streets and marked as discontinued.

An owner of property abutting upon a street thus discontinued is entitled, under section 14 of the act of 1895, to have the commissioners of estimate and assessment, appointed in a proceeding to open the permanent street indicated on such plan in place of the discontinued street, ascertain and determine the damages resulting to him from its discontinuance, and to recover such damages from the city.

VAN BRUNT, P. J., dissented.

APPEAL by Theodore Sattler and another from an order of the Supreme Court, made at the New York Special Term and entered in the office of the clerk of the county of New York on the 2d day of October, 1900, denying their motion to refer their claim to the commissioners of estimate and assessment under chapter 1006 of the Laws of 1895.

*Joseph A. Flannery*, for the appellants.

*John P. Dunn*, for the respondent.

INGRAHAM, J. :

The appellants, the owners of a lot of land upon a street known as Monroe or Morris avenue, which for many years has been open as a public street, applied to the court by a petition under section 14 of chapter 1006 of the Laws of 1895, asking that the commissioners of estimate and assessment appointed in this proceeding be

directed to estimate and determine the compensation which should justly be made to them for loss or damage sustained by the discontinuance or closing of the said Morris avenue upon which the appellants' property abuts.

It appeared in this proceeding that Morris avenue, upon which the appellants' land abutted, has been for many years a public street and used as such, but that the street had not been opened under any proceeding instituted by the city of New York; that by chapter 545 of the Laws of 1890 provision was made for making and filing the maps and plans of the streets and avenues in the twenty-third and twenty-fourth wards of the city of New York; and the commissioner of street improvements for the said wards was directed within a time named to complete the surveys, maps, plans and profiles of all the streets, roads, avenues, public squares and places located and laid out, or thereafter to be located and laid out, in said territory, and that said maps and plans, upon being approved by the board of street opening of the city, and filed as provided for by the act, should be final and conclusive as to the location, width, grades and class of streets, roads, avenues, public squares and places exhibited on such maps, plans and profiles. In pursuance of that act, maps and plans for the permanent location of the streets and avenues in the twenty-third and twenty-fourth wards were finally adopted on June 17, 1895, and filed December 17, 1895. By those maps a new street called Morris avenue was laid out, but the old Morris avenue, the street or road upon which the petitioner's property abutted, was indicated upon such map as a street discontinued. Prior to the filing of this map, and on June 12, 1895, chapter 1006 of the laws of that year became a law. By section 1 it was provided that "in each city containing, according to the latest census, a population of more than one million two hundred and fifty thousand inhabitants, the local authorities may authorize in the manner hereinafter provided the discontinuance of such streets, avenues, roads, highways, alleys, lanes and thoroughfares therein as they may deem to be necessary in order to more effectually secure and preserve regularity and uniformity in the general and permanent plan of streets and avenues and public places therein." By section 2 it was provided that "the local authorities authorized by law to lay out, open, extend, alter or improve streets,

avenues and roads in any such city or district thereof, and to make and file a map or plan showing the streets, avenues and roads so laid out, opened, altered, extended or improved, shall upon any map or plan so made and filed by them, designate only the streets, avenues and roads which they may determine to so lay out, open, alter, extend or otherwise improve as the permanent streets, avenues and roads in and for such city, or for the particular district or section thereof shown upon such map or plan, omitting therefrom all such former streets, avenues, roads, highways, alleys, lanes and thorough-fares which they may determine to discontinue or close.   *   *   * Upon and after the filing of such map the streets, avenues and roads shown thereon shall be the only lawful streets, avenues and roads in that section of such city shown upon such map or plan, and all other former streets, avenues, roads, highways, alleys, lanes and thoroughfares theretofore laid out, dedicated or established not shown thereon, and which are not then actually open or in public use, shall from and after the filing of such map or plan cease to be or remain for any purpose whatever a street, avenue, highway, road, alley, lane or thoroughfare, and the owner or owners of the fee of the land or soil within the boundaries thereof may thereupon enclose, use and occupy the same as fully as if the same had not been laid out, dedicated, established or used."

The question to be determined on this appeal is whether the filing by the municipal authorities of the city of New York of the map or plan of the twenty-third and twenty-fourth wards under chapter 545 of the Laws of 1890, before referred to, did, under section 2 of chapter 1006 of the act of 1895, discontinue the street shown on the map as the old Morris avenue ; and I think that the filing of the map did as a fact operate to discontinue the existing street under this provision.   Section 1 of the act gives the municipal authorities of the cities mentioned therein the power to discontinue public streets or thoroughfares in the manner thereafter indicated.   Section 2 then provides that the local authorities authorized by law to lay out, open, extend, alter or improve streets, avenues or roads in any city or district, and to make or file a map or plan showing such streets, avenues and roads so laid out, shall, upon any map or plan so made, that is, upon a map or plan not made under the authority of section 1, but under authority conferred upon them by

other provisions of law, designate only the streets, avenues or roads which they may determine to lay out, open or improve as permanent streets or avenues in and for such city, or a particular section and district thereof; and when the local authorities under existing provisions of law made and filed a permanent map showing the permanent roads or streets for a city, or a particular district therein, they were directed to show upon such map or plan only the streets or avenues which should be the permanent streets and avenues. The statute then provides that upon and after the filing of such map the streets, avenues and roads shown thereon shall be the only lawful streets, avenues or roads in that section of the city to which such map or plan relates; and all other former streets, avenues or roads shall, from and after the filing of such map or plan, cease to be or remain for any purpose whatever a street, avenue or road.

It would seem to have been the clear intention of the Legislature to provide that when the permanent plan of a city is finally adopted by the municipal authorities, all streets or roads not shown upon the plan as permanent streets or avenues should be discontinued as public streets; and thus, when the local authorities, under the power granted by chapter 545 of the Laws of 1890, filed their plan or map of the twenty-third and twenty-fourth wards of the city of New York, locating upon that plan or map certain permanent streets and avenues, all streets and avenues not therein designated as permanent streets or avenues by operation of this section became discontinued as public streets and avenues. This construction gives effect to both of the acts and would seem to be necessary for the proper development of these outlying districts of the city of New York. It was essential that this Morris avenue as it existed before the making of this permanent plan should be discontinued, as it was inconsistent with the plan of the streets and avenues in that locality as finally adopted; and there can be no reason why it should be continued.

We also think that merely tracing upon this map the location of the old streets and marking them as streets discontinued was a substantial compliance with the statute which directed the municipal authorities to designate only the streets, avenues and roads which they might determine to so lay out or improve as the permanent streets and avenues of that portion of the city. The fact that there

appeared upon this plan the permanent streets, and also the lines of existing streets to show their relation to the new streets, plainly indicating that such old streets were to be discontinued and, therefore, to be no longer used by the public as permanent streets or highways, did not affect the operation of the provisions of law closing those streets not designated upon the plan as permanent streets of the city. The plain intention of the Legislature by this enactment was, we think, to allow a permanent plan to be made upon which should be indicated the permanent streets or avenues of the city. This the plan did, and it was those streets not thus designated on the map as the permanent city avenues and streets that were to be discontinued as such streets. We think, therefore, that the filing of the plan by the municipal authorities discontinued this old Morris avenue upon which the plaintiffs' property abuts as a public street, and that the owners of the property abutting on the street were entitled under the act of 1895 to compensation from the city for all injuries that they sustained in consequence of a discontinuance of this avenue or street as a public street. Section 3 of the act of 1895 applied only to proceedings to discontinue a street or avenue laid out upon the permanent plan adopted as such; and as this old Morris avenue was never indicated upon such permanent plan, the provisions of this section did not apply When the municipal authorities commenced this proceeding to open Morris avenue, as laid out upon the permanent map or plan of this portion of the city before referred to as a permanent street, the owners of property abutting on the closed street were entitled under section 14 of the act of 1895 to have the commissioners of estimate and assessment ascertain and determine the compensation which should justly be made for any loss or damage to the property occasioned by the discontinuance or closing of the old Morris avenue upon which their property abutted.

The court below denied the application upon the ground that the filing of the map and plan of this portion of the city under the Laws of 1890 did not have the effect of closing the streets under section 2 of the act of 1895, and that the petitioner's easement of light, air and access in the old street was not affected by that closing of the street.

It is not necessary to determine upon this application whether the

appellants are entitled to damages for the interference with their private easement in this discontinued street. It is for the commissioners to ascertain the damage that they have sustained in consequence of the discontinuance of Morris avenue as a public street or highway, and their determination of that question is subject to review. The Legislature intended that the appellants should be compensated for the damage that they should sustain by and in consequence of the discontinuance or closing of this street or avenue, and it is this damage that the appellants were entitled to have estimated and determined by the commissioners in this proceeding.

We think the order appealed from should be reversed, with ten dollars costs and disbursements, and the motion granted, with ten dollars costs.

Rumsey, Patterson and Hatch, JJ., concurred; Van Brunt, P. J., dissented for the reasons stated in the opinion below.*

Hatch, J. (concurring):

I concur in the views expressed by Mr. Justice Ingraham in his opinion herein, and I am also of the opinion that his construction of the acts in question has received the sanction both of this court and of the Court of Appeals. (*Matter of Mayor*, 28 App. Div. 143; affd., 157 N. Y. 409.)

The record in that case, which was before this court on the appeal, discloses that the map then in question related to Gerard avenue, between One Hundred and Sixty-eighth street and One Hundred and Sixty-ninth street, as laid down on section 9 of the final plans of the twenty-third and twenty-fourth wards, filed November 2, 1895. In construing chapter 1006 of the Laws of 1895 as to the effect of the filing of the map, Mr. Justice Patterson, writing the opinion of the court, says (p. 146) "that much of Gerard avenue became closed by the filing of the map, and thus the respondents' easements of light, air and access to their Gerard avenue frontage were in legal effect taken away." An appeal from this decision was permitted, and certain questions were certified for review, the first of which was as follows: "*First.* Was the effect of Chapter 1006 of the Laws of 1895, taken in connection with the action taken by the commissioner of street improvements of the twenty-third and

* See *post*, p. 129.

twenty-fourth wards of the city of New York and the board of
street opening and improvement of said city, to discontinue and
close that part of Gerard avenue in the twenty-third ward of the
city of New York, abutting on the respondents' lands between One
Hundred and Sixty-eighth and One Hundred and Sixty-ninth
streets, * * * so as to extinguish the easements of the respond-
ents therein ? "

This question presents the identical subject now before us for
determination, except as to the particular street. The map now
before us is a part of the same final plans of the twenty-third and
twenty-fourth wards, to wit : " Extract from Section 14 of the
Final Maps of the 23d and 24th wards. Adopted June 17, 1895.
Filed December 17th, 1895." It is shown by the record in *Matter
of Mayor (supra)* that the section there in question was also adopted
June 17, 1895, but was filed November 2, 1895.

The Court of Appeals did not answer the question certified to it
categorically, but said : " We think that the provisions of chapter
1006 of the Laws of 1895 are within the constitutional powers of
the Legislature, and that the order in this case should be affirmed.
* * * We have not thought it necessary to enter upon a discus-
sion of this question, for the reason that the very able opinion
written below, in which we fully concur, covers all the points
involved."

These cases definitely determine that the effect of the filing of
the maps in question was to close and discontinue the old street
known as Morris avenue, and to take away the appellants' easements
of light, air and access therein and thereto as effectually as in the
case of Gerard avenue.

I am of the opinion, also, that chapter 712 of the Laws of 1896,
entitled " An act in relation to the final maps, plans and profiles of
the twenty-third and twenty-fourth wards of the city of New York,"
has the effect to remove any objection to the maps and plans in
question which might have existed by reason of the failure of the
authorities to follow technically and exactly the requirements of
the statutes providing therefor, and ratified and confirmed the same
in all respects. It includes in its provisions, in express terms, sec-
tions 1 to 28, inclusive, of the final maps and profiles of the twenty-
third and twenty-fourth wards of the city of New York, and while

App. Div.]     FIRST DEPARTMENT, DECEMBER TERM, 1900.

the language of the act is confined to the opening, acquiring, laying out and establishing streets, it in terms provides that " every provision of law in relation to the laying out and establishment of said streets, avenues, roads, public squares, parks and places, * * * and in relation to the making and filing of the final maps and profiles thereof, shall hereafter be deemed to have been complied with." As there is no limitation or restriction in the act applicable to this subject and as its evident scope was the whole scheme embodied in the maps, plans and profiles adopted for said wards and filed for the purpose of perfecting and establishing the system of new streets and the discontinuance of old ones, it seems to me that it clearly removes any doubt as to the purpose and effect of the act.

RUMSEY and INGRAHAM, JJ., concurred.

The following is the opinion of the court below, referred to by VAN BRUNT, P. J.:

BISCHOFF, JR., J.:

The city has instituted proceedings to acquire title to the hereinafter-named streets, and commissioners of estimate and assessment have been appointed. The petitioner Dowd is the owner of the premises fronting on Kingsbridge road over which the said premises enjoyed the usual street easements of light, air and access. Kingsbridge road is shown as discontinued and closed on the final maps of the twenty-third and twenty-fourth wards. Grote street is one of the streets laid out on the final maps bounding the block within which this part of Kingsbridge road is situated. The petitioner Sattler is the owner of premises fronting on Monroe avenue, between East One Hundred and Eighty-first street and East One Hundred and Eighty-second street, over which the said premises enjoyed the usual street easements of light, air and access. Monroe avenue is shown as discontinued and closed on the final maps of the twenty-third and twenty-fourth wards. Morris avenue is one of the streets laid out on the final maps bounding the block within which this part of Monroe avenue is situated. The petitioner Brass is the owner of the premises situated on Eighth avenue, southerly from Walnut street, over which the said premises enjoyed the usual street easements of light, air and access. Eighth avenue is shown

as discontinued and closed on the final maps of the twenty-third and twenty-fourth wards. Walton avenue is one of the streets laid out on the final maps bounding the block within which this part of Eighth avenue is situated. These motions are for orders directing the commissioners appointed in the several proceedings to ascertain and determine the compensation which should justly be made for the loss and damage sustained by the several petitioners. They maintain that such easements of light, air and access as their premises formerly enjoyed over the streets on which they fronted have been extinguished and lost by act of the municipality in the proposed adoption and filing of the final maps of the twenty-third and twenty-fourth wards and by force of the provisions of chapter 1006 of the Laws of 1895. Acting under section 14 of chapter 1006 of the Laws of 1895, the petitioners have applied for an order directing the commissioners of estimate and assessment, who have already been appointed in the above proceedings, to estimate the damages which their premises have suffered by reason of the extinguishment of the easements of light, air and access appurtenant to their lots over the streets on which they fronted, caused by the discontinuance and closing of that part of the highways on which the premises formerly abutted.

The facts alleged in the several petitions are not in substance denied, but the granting of these motions is resisted by the city of New York principally upon the grounds that the easements which petitioners' lots formerly enjoyed over the highways on which they fronted have not been extinguished, either by any acts of the municipality or by virtue of chapter 1006 of the Laws of 1895; that the demand for damages was not filed by petitioners within the time specified by chapter 1006 of the Laws of 1895, and that, conceding chapter 1006 of the Laws of. 1895 to apply to these streets, the easements of light, air and access which the petitioners' premises formerly enjoyed over the highways on which they fronted have not been extinguished, as none of the streets to which the city has acquired title to the fee have been, within the term as used in chapter 1006 of the Laws of 1895, opened. It appears from the moving papers that by reason of the powers devolved on him by chapter 545 of the Laws of 1890 the commissioner of streets of the twenty-third and twenty-fourth

wards caused to be made and submitted to the board of street open-
ing and improvement the sections of the final maps of that part of
the twenty-third and twenty-fourth wards within which are situ-
ated the several petitioners' premises; that the board of street open-
ing and improvement on June 17, 1895, in pursuance of chapter 545
of the Laws of 1890, adopted and approved these maps, and directed
the commissioner of street improvements of the twenty-third and
twenty-fourth wards to file three sets thereof in the offices required
by law, and that on November 2, 1895, they filed in the office of the
Secretary of State and in the commissioner's office three similar sets
of maps or plans of certain districts designated respectively as sec-
tions 9, 12 and 14 of the final maps of the twenty-third and twenty-
fourth wards, embracing the premises in question. The streets laid
out and established as the permanent streets of said district on said
maps were so laid out under and in pursuance of the powers con-
ferred on said commissioner by chapter 545 of the Laws of 1890.
It appears that these maps not only show the streets which are to
be retained as the final streets of the twenty-third and twenty-
fourth wards, but also the streets which are intended to be discon-
tinued and abandoned, and among the discontinued and abandoned
streets are those on which the several petitioners' premises abut. It
is because of these acts of the public authority and by force of the
provisions of chapter 1006 of the Laws of 1895, which went into
effect on June 12, 1895, that the petitioners herein claim the ease-
ments of light, air and access which their premises formerly enjoyed
over the streets on which they fronted were extinguished and lost
and for which they seek compensation. It is not claimed that any
of the streets bounding the blocks within which are situated the
premises in question have been thrown open for public traffic subse-
quent to the passage of chapter 1006 of the Laws of 1895, although
the city has acquired title to them as public streets. The first inquiry
of importance is as to whether by any acts of the municipality prior
to chapter 1006 of the Laws of 1895 the easements of light, air and
access which the several petitioners formerly enjoyed have been
extinguished or lost, and which involves the inquiry whether the
filing of the final maps of the twenty-third and twenty-fourth
wards on November 2, 1895, extinguished these easements. There
seems to be no doubt that a municipality may abandon a public

highway and discontinue and close it so as to extinguish the rights of the public therein, and yet leave surviving the rights of easements of light, air and access which are appurtenant to every lot abutting a public highway without regard to the manner of the creation of the highway. This rests upon the theory that the easements of light, air and access over a highway, and which are separate and distinct from the public right of way, survive the public abandonment of the street. (*Holloway* v. *Southmayd*, 139 N. Y. 410; *Story* v. *New York Elevated R. R. Co.*, 90 id. 122; *Lahr* v. *Metropolitan Elevated R. Co.*, 104 id. 269.) While it is true a municipality may abandon a public highway so as to extinguish not only the public rights but the private easements appurtenant to the lots (*Matter of Mayor*, 157 N. Y. 412), yet it seems questionable whether prior to chapter 1006 of the Laws of 1895, there was any act of the Legislature in force affecting the city of New York which authorized the closing of a public highway so as to extinguish the private easements appurtenant to the abutting lots. It was only the public rights which could be affected by the closing under the prior statutes. At least such was the effect of chapter 213 of the Laws of 1818, and of the act of April 24, 1867 (Chap. 697), the latter of which was construed in the much-criticised case of *Holloway* v. *Southmayd* (139 N. Y. 410), and which clearly held that only public rights could be extinguished thereunder. The act in force when the final maps of the twenty-third and twenty-fourth wards were prepared and filed, and under which the maps were approved and adopted by the board of street opening and improvement, was chapter 545 of the Laws of 1890. This act authorized the commissioner of street improvements of the twenty-third and twenty-fourth wards, with the consent and approval of the board of street opening and improvement, to discontinue and abandon public highways, and it would appear that such act had no greater force than that considered in *Holloway* v. *Southmayd* (*supra*), the action taken thereunder effecting the abandonment of the public rights alone. And, if this be true, such steps had no greater effect than to abandon the public rights in those streets, leaving surviving the rights appurtenant to the petitioners' premises over the abandoned highways, and which are sought to be compensated for herein, and which give rise to the consideration of the effect of chapter 1006 of the Laws of 1895 as touching this question. To

sustain the theory of the petitioners herein it is necessary to hold that, after the city authorities had acted on these matters under chapter 545 of the Laws of 1890, chapter 1006 of the Laws of 1895 was self-executing to the extent that thereupon these easements which had survived in the abandoned highways became extinguished and were lost by force of the provisions of the latter statute. A careful analysis of this statute would indicate that the Legislature intended no summary method of procedure. It may be true that these easements could be extinguished by this act, and, indeed, such is an express adjudication of the matter (*Matter of Mayor*, 157 N. Y. 412), and the question arises whether, construed in the most favorable light to the petitioners, it may be said that the city has availed itself of the powers granted by chapter 1006 of the Laws of 1895. The position taken by the city is that it has never authorized the discontinuance and closing of streets in the manner provided for by this act, so far as relates to the streets on which the petitioners' premises abutted. This seems to be conceded by the petitioners, in so far as any affirmative act on the part of the city is concerned looking toward the extinguishment of the easements sought to be recovered for herein by direct act of the city, as provided expressly by chapter 1006 of the Laws of 1895. It may be, and undoubtedly is, true, as pointed out by Mr. Justice PATTERSON in *Matter of Mayor* (28 App. Div. 143), that the statute under consideration provides a complete scheme for closing streets and avenues in the city of New York, but it must not be overlooked that such statute does not appear to be mandatory so far as the public authorities are concerned, or in terms self-executing; but, on the contrary, seems to vest a discretion in them to avail themselves of the powers granted or not. This is clearly apparent from the language used in section 1 of the act: "The local authorities may authorize in the manner hereinafter provided the discontinuance of such streets * * * therein as they may deem to be necessary in order to more effectually secure and preserve regularity and uniformity in the general and permanent plan of streets and avenues and public places therein, or where other public necessity in the judgment of such local authorities requires the discontinuance thereof in whole or in part." The language used in this section leaves no room for doubt as to the intention of the Legislature to vest a discretion in the local

authorities. There is no absolute right on the part of the petitioners herein to have these easements over the former public highways extinguished and taken away, nor is there any absolute duty to be performed or right enforced by the city ; hence, it could scarcely be argued that " may " should be construed " must " as used in this section. Besides, the statute provides for the exercise of the judgment of the local authorities as to the time or necessity for the discontinuance of streets. If the Legislature had intended the act in this respect to be self-executing, then the language of discretion vested in the authorities would be inconsistent therewith, and it is evident that the easements surviving the public abandonment of the public highways were not to be extinguished unless the proper authorities determined to act, and unless they proceeded in the manner authorized by the act. Hence, I believe the city is correct in its contention that if it desires to extinguish such easements it has power under chapter 1006 of the Laws of 1895 so to do, but that it first must pass judgment on the necessity for so doing, and after such judgment has been reached must proceed in the manner provided for by the act, and file the maps required by section 2. After these maps have been filed the easements are extinguished, if the street has not been opened, and the property owner damaged thereby has six years after that time to file his claim if the street has been abandoned by the final maps, or has two years to file his claim if the street has been abandoned by a prior or former layout. This construction I believe to be in harmony with the general purview of the statute, and is that which would best protect the rights of parties interested. It is not contended that such a map as is provided for under section 2 of chapter 1006 of the Laws of 1895 has been expressly prepared and filed in reference to the streets on which the petitioners' premises abut, it appearing that the only map that has been filed, and on which the petitioners base their claim that these private easements have been extinguished, is the map filed as aforesaid on the 2d day of November, 1895, and adopted June 17, 1895, by the board of street opening and improvement under the prior statute. This map does not meet the requirements of section 2, chapter 1006 of the Laws of 1895. The new streets or contemplated layout are indicated in black lines and yellow color thereon. The streets intended to be discontinued are shown in black lines and gray color. The

various streets on which the petitioners' premises abutted are shown on this map in black lines and gray color. This map is not a map on which there is designated only the streets which they may determine to lay out, omitting therefrom all such former streets which they may determine to discontinue or close. The discontinued streets are not omitted from this map. It shows, not only the streets which the public authorities determine to lay out, but it also shows the streets which the public authorities have determined to discontinue and close. It is true that the streets they determine to discontinue and close are streets shown on this map as discontinued streets, but they are, nevertheless, streets shown on and they are not omitted from this map. The question of what constitutes a street shown on a map, as well as what constitutes a street omitted from the map, has been passed upon in the Court of Appeals in *Matter of Barclay* (91 N. Y. 430), and under this authority these streets must be considered as streets shown upon the final maps of the twenty-third and twenty-fourth wards. Other streets are also shown upon this same map in the same manner, indicating the intention of the public authorities at some time to discontinue and close them, and for aught we know to reserve the right, with the purpose in view of appropriating them for other purposes. It is, therefore, not a map which fulfills the requirements of section 2 of chapter 1006 of the Laws of 1895, requiring "the local authorities authorized by law to lay out * * * streets, avenues and roads * * * and to make and file a map or plan showing the streets, avenues and roads so laid out * * * shall upon any map or plan so made and filed by them designate only the streets * * * which they may determine to so lay out * * * as the permanent streets, avenues and roads in and for such city, * * * omitting therefrom all such former streets * * * which they may determine to discontinue or close. * * * Upon and after the filing of such map, the streets,. avenues and roads shown thereon shall be the only lawful streets * * * in that section of such city * * * and all other former streets * * * theretofore laid out, dedicated or established not shown thereon and which are not then actually open or in public use shall, from and after the filing of such map or plan, cease to be or remain, for any purpose whatever, a street. * * * But in all cases where

any such street    *    *    *    is, at the time of the filing of such permanent map,    *    *    *    actually open and in public use, such parts or portions thereof as are included within the boundaries of any square or plot of ground made by the intersection of any streets, avenues or roads laid out by the local authorities upon the permanent map or plan of said city,    *    *    *    shall, ever after any one of the streets, avenues or roads bounding such square or plot shall be opened, cease to be or remain for any purpose whatever a street    *    *    *    and the owner in fee of the land or soil within the boundaries thereof may thereupon enclose, use and occupy the same as fully as if the same had not been laid out,    *    *    *    established or used." From this it is clear that, until the map required by this section is filed, there is no authority for the owner of the fee of the land or soil to occupy the same as if it had not been a street. Thus, the time specified in this section when the occupancy of the soil of the abandoned street is authorized is further evidence that the act does not of itself extinguish the easements that survive a public abandonment merely of a highway accruing under authority other than of chapter 1006 of the Laws of 1895, nor does anything else in the statute change such interpretation. This conclusion renders it unnecessary to pass upon the further points raised by the city in opposition to the motions, which must be denied. Settle order on notice.

Order reversed, with ten dollars costs and disbursements, and motion granted, with ten dollars costs.