### In re MAYOR, ETC., OF CITY OF NEW YORK.

(Supreme Court, Appellate Division, First Department. December 14, 1900.)

STREETS—DISCONTINUANCE—FILING OF MAPS.

    The filing of a map and plan under Laws 1890, c. 545, providing for the making and filing of maps and plans of streets and avenues in certain wards in New York City by the commissioner of street improvements, which, when filed and approved, should be conclusive of location, grade, etc., of streets exhibited thereon, being subsequent to the taking effect of Laws 1895, c. 1006, discontinues and closes a street traced thereon and marked as discontinued, under section 2 of the latter act, providing that local authorities authorized to lay out and improve streets, and to make and file a map or plan, shall, on any such map or plan, designate only the streets which they may determine to so lay out, open, alter, extend, or otherwise improve as the permanent streets, omitting all such former streets as they may determine to discontinue or close; and after such filing the streets shown on the map shall be the only lawful streets, and all other former streets not shown thereon shall cease to be streets for any purpose.

    Van Brunt, P. J., dissenting.

Appeal from special term, New York county.

In the matter of the application of the mayor, etc., of the city of New York relative to acquiring title to Morris avenue from Tremont avenue to Park View Terrace. From an order denying a motion of Theodore Sattler and others to refer the claim to commissioners of estimates, etc., under Laws 1895, c. 1006, they appeal. Reversed.

The following is the opinion of the court below (BISCHOFF, J.):

In the matter of Grote street (petitioner, Dowd), in the matter of Morris avenue (petitioner, Sattler), and in the matter of Walton avenue (petitioner, Brass), the city has instituted proceedings to acquire title to the above-named streets, and commissioners of estimate and assessment have been appointed. The petitioner Dowd is the owner of the premises fronting on Kingsbridge road, over which the said premises enjoyed the usual street easements of light, air, and access. Kingsbridge road is shown as discontinued and closed on the final maps of the Twenty-Third and Twenty-Fourth wards. Grote street is one of the streets laid out on the final maps bounding the block within which this part of Kingsbridge road is situated. The petitioner Sattler is the owner of premises fronting on Monroe avenue, between East One Hundred and Eighty-First street and East One Hundred and Eighty-Second street, over which the said premises enjoyed the usual street easements of light, air, and access. Monroe avenue is shown as discontinued and closed

on the final maps of the Twenty-Third and Twenty-Fourth wards. Morris avenue is one of the streets laid out on the final maps bounding the block within which this part of Monroe avenue is situated. The petitioner Brass is the owner of the premises situated on Eighth avenue, southerly from Walnut street, over which the said premises enjoyed the usual street easements of light, air, and access. Eighth avenue is shown as discontinued and closed on the final maps of the Twenty-Third and Twenty-Fourth wards. Walton avenue is one of the streets laid out on the final maps bounding the block within which this part of Eighth avenue is situated. These motions are for orders directing the commissioners appointed in the several proceedings to ascertain and determine the compensation which should justly be made for the loss and damage sustained by the several petitioners. They maintain that such easements of light, air, and access as their premises formerly enjoyed over the streets on which they fronted have been extinguished and lost by act of the municipality in the proposed adoption and filing of the final maps of the Twenty-Third and Twenty-Fourth wards, and by force of the provisions of chapter 1006 of the Laws of 1895. Acting under section 14 of chapter 1006 of the Laws of 1895, the petitioners have applied for an order directing the commissioners of estimate and assessment, who have already been appointed in the above proceedings, to estimate the damages which their premises have suffered by reason of the extinguishment of the easements of light, air, and access appurtenant to their lots over the streets on which they fronted, caused by the discontinuance and closing of that part of the highways on which the premises formerly abutted.

The facts alleged in the several petitions are not, in substance, denied, but the granting of these motions is resisted by the city of New York principally upon the grounds that the easements which petitioners' lots formerly enjoyed over the highways on which they fronted have not been extinguished, either by any acts of the municipality, or by virtue of chapter 1006 of the Laws of 1895; that the demand for damages was not filed by petitioners within the time specified by chapter 1006 of the Laws of 1895; and that, conceding chapter 1006 of the Laws of 1895 to apply to these streets, the easements of light, air, and access which the petitioners' premises formerly enjoyed over the highways on which they fronted have not been extinguished, as none of the streets to which the city has acquired title to the fee have been, within the term as used in chapter 1006 of the Laws of 1895, opened. It appears from the moving papers that, by reason of the powers devolved on him by chapter 545 of the Laws of 1890, the commissioner of streets of the Twenty-Third and Twenty-Fourth wards caused to be made and submitted to the board of street opening and improvement the sections of the final maps of that part of the Twenty-Third and Twenty-Fourth wards within which are situated the several petitioners' premises; that the board of street opening and improvement on June 17, 1895, in pursuance of chapter 545 of the Laws of 1890, adopted and approved these maps, and directed the commissioner of street improvements of the Twenty-Third and Twenty-Fourth wards to file three sets thereof in the offices as required by law; and that on November 2, 1895, they filed in the office of the secretary of state and in the commissioner's office three similar sets of maps or plans of certain districts, designated; respectively, as sections 9, 12, and 14 of the final maps of the Twenty-Third and Twenty-Fourth wards, embracing the premises in question. The streets laid out and established as the permanent streets of said district on said maps were so laid out under and in pursuance of the powers conferred on said commissioner by chapter 545 of the Laws of 1890. It appears that these maps not only show the streets which are to be retained as the final streets of the Twenty-Third and Twenty-Fourth wards, but also the streets which are intended to be discontinued and abandoned, and among the discontinued and abandoned streets are those on which the several petitioners' premises abut. It is because of these acts of the public authority, and by force of the provisions of chapter 1006 of the Laws of 1895, which went into effect on June 12, 1895, that the petitioners herein claim the easements of light, air, and access which their premises formerly enjoyed over the streets on which they fronted were extinguished and lost, and for which they seek compensation. It is not claimed that any of the streets bounding the blocks within which are situated.

the premises in question have been thrown open for public traffic subsequent to the passage of chapter 1006 of the Laws of 1895, although the city has acquired title to them as public streets.

The first inquiry of importance is as to whether by any acts of the municipality prior to chapter 1006 of the Laws of 1895 the easements of light, air, and access which the several petitioners formerly enjoyed have been extinguished or lost, and which involves the inquiry whether the filing of the final maps of the Twenty-Third and Twenty-Fourth wards on November 2, 1895, extinguished these easements. There seems to be no doubt that a municipality may abandon a public highway, and discontinue and close it, so as to extinguish the rights of the public therein, and yet leave surviving the rights of easement of light, air, and access, which are appurtenant to every lot abutting a public highway, without regard to the manner of the creation of the highway. This rests upon the theory that the easements of light, air, and access over a highway, and which are separate and distinct from the public right of way, survive the public abandonment of the street. Holloway v. Southmayd, 139 N. Y. 410, 34 N. E. 1047, 1052; Story v. Railroad Co., 90 N. Y. 122; Lahr v. Railway Co., 104 N. Y. 269, 10 N. E. 528. While it is true a municipality may abandon a public highway so as to extinguish not only the public rights, but the private easements appurtenant to the lots (In re Mayor, etc., of City of New York, 157 N. Y. 412, 52 N. E. 1126), yet it seems questionable whether, prior to chapter 1006 of the Laws of 1895, there was any act of the legislature in force affecting the city of New York which authorized the closing of a public highway so as to extinguish the private easements appurtenant to the abutting lots. It was only the public rights which could be affected by the closing under the prior statutes. At least, such was the effect of chapter 213 of the Laws of 1818, and of the act of April 24, 1867, the latter of which was construed in the much-criticised case of Holloway v. Southmayd, 139 N. Y. 410, 34 N. E. 1047, 1052, and which clearly held that only public rights thereunder could be extinguished. The act in force when the final maps of the Twenty-Third and Twenty-Fourth wards were prepared and filed, and under which the maps were approved and adopted by the board of street opening and improvement, was chapter 545 of the Laws of 1890. This act authorized the commissioner of street improvements of the Twenty-Third and Twenty-Fourth wards, with the consent and approval of the board of street opening and improvement, to discontinue and abandon public highways; and it would appear that such act had no greater force than that considered in Holloway v. Southmayd, supra, the action taken thereunder affecting the abandonment of the public rights alone. And, if this be true, such steps had no greater effect than to abandon the public rights in those streets leaving surviving the rights appurtenant to the petitioners' premises over the abandoned highways, and which are sought to be compensated for herein, and which give rise to the consideration of the effect of chapter 1006 of the Laws of 1895 as touching this question.

To sustain the theory of the petitioners herein, it is necessary to hold that, after the city authorities had acted on these matters under chapter 545 of the Laws of 1890, chapter 1006 of the Laws of 1895 was self-executing to the extent that thereupon these easements which had survived in the abandoned highways became extinguished and were lost by force of the provisions of the latter statute. A careful analysis of this statute would indicate that the legislature intended no summary method of procedure. It may be true that these easements could be extinguished by this act, and, indeed, such is an express adjudication of the matter (In re Mayor, etc., of City of New York, 157 N. Y. 412, 52 N. E. 1126); and the question arises whether, construed in the most favorable light to the petitioners, it may be said that the city has availed itself of the powers granted by chapter 1006 of the Laws of 1895. The position taken by the city is that it has never authorized the discontinuance and closing of streets in the manner provided for by this act, so far as relates to the streets on which the petitioners' premises abutted. This seems to be conceded by the petitioners, in so far as any affirmative act on the part of the city is concerned, looking towards the extinguishment of the easements sought to be recovered for herein by direct act of the city, as provided expressly by chapter 1006 of the Laws of 1895. It may be, and undoubtedly is,

true, as pointed out by Mr. Justice Patterson in Re Mayor, etc., of City of New York, 28 App. Div. 143, 52 N. Y. Supp. 588, that the statute under consideration provides a complete scheme for closing streets and avenues in the city of New York; but it must not be overlooked that such statute does not appear to be mandatory, so far as the public authorities are concerned, or in terms self-executing, but, on the contrary, seems to vest a discretion in them to avail themselves of the powers granted or not. This is clearly apparent from the language used in section 1 of the act: "The local authorities may authorize in the manner hereinafter provided the discontinuance of such streets therein as they may deem to be necessary in order to more effectually secure and preserve regularity and uniformity in the general and permanent plan of streets and avenues and public places therein, or where other public necessity in the judgment of such local authorities requires the discontinuance thereof in whole or in part." The language used in this section leaves no room for doubt as to the intention of the legislature to vest a discretion in the local authorities. There is no absolute right on the part of the petitioners herein to have these easements over the former public highways extinguished and taken away, nor is there any absolute duty to be performed or right enforced by the city; hence it could scarcely be argued that "may" should be construed "must," as used in this section. Besides, the statute provides for the exercise of the judgment of the local authorities as to the time or necessity for the discontinuance of streets. If the legislature had intended the act, in this respect, to be self-executing, then the language of discretion vested in the authorities would be inconsistent therewith; and it is evident that the easements surviving the public abandonment of the public highways were not to be extinguished unless the proper authorities determined to act, and unless they proceeded in the manner authorized by the act. Hence I believe the city is correct in its contention that, if it desires to extinguish such easements, it has power, under chapter 1006 of the Laws of 1895, so to do, but that it first must pass judgment on the necessity for so doing, and, after such judgment has been reached, must proceed in the manner provided for by the act, and file the maps required by section 2. After these maps have been filed, the easements are extinguished, if the street has not been opened; and the property owner damaged thereby has six years after that time to file his claim if the street has been abandoned by the final maps, or has two years to file his claim if the street has been abandoned by a prior or former layout. This construction I believe to be in harmony with the general purview of the statute, and is that which would best protect the rights of parties interested.

It is not contended that such a map as is provided for under section 2 of chapter 1006 of the Laws of 1895 has been expressly prepared and filed in reference to the streets on which the petitioners' premises abut; it appearing that the only map that has been filed, and on which the petitioners base their claim that these private easements have been extinguished, is the map filed as aforesaid on the 2d day of November, 1895, and adopted June 17, 1895, by the board of street opening and improvement, under the prior statute. This map does not meet the requirements of section 2, c. 1006, of the Laws of 1895. The new streets or contemplated layout are indicated in black lines and yellow color thereon. The streets intended to be discontinued are shown in black lines and gray color. The various streets on which the petitioners' premises abutted are shown on this map in black lines and gray color. This map is not a map on which there is designated only the streets which they may determine to lay out, omitting therefrom all such former streets which they may determine to discontinue or close. The discontinued streets are not omitted from this map. It shows not only the streets which the public authorities determine to lay out, but it also shows the streets which the public authorities have determined to discontinue and close. It is true that the streets they determine to discontinue and close are streets shown on this map as discontinued streets, but they are nevertheless streets shown on, and they are not omitted from, this map. The question of what constitutes a street shown on a map, as well as what constitutes a street omitted from the map, has been passed upon in the court of appeals in Re Barclay, 91 N. Y. 430, and under this authority these streets must be considered as streets shown

upon the final maps of the Twenty-Third and Twenty-Fourth wards. Other streets are also shown upon this same map in the same manner, indicating the intention of the public authorities at some time to discontinue and close them, and, for aught we know, to reserve the right, with the purpose in view of appropriating them for other purposes. It is, therefore, not a map which fulfills the requirements of section 2 of chapter 1006 of the Laws of 1895, requiring "the local authorities authorized by law to lay out * * * streets and avenues and to make and file a map or plan showing the streets, avenues or roads so laid out * * * shall upon any map or plan so made and filed by them designate only the streets * * * which they may determine to so lay out * * * as the permanent streets, avenues or roads in and for said city, omitting therefrom all such former streets * * * which they may determine to discontinue or close. Upon and after the filing of such map, the streets, avenues or roads in that section of said city shown thereon shall be the only lawful streets * * * and all other former streets theretofore laid out, dedicated or used, not shown thereon and which are not then actually opened or in public use shall, from and after the filing of such map or plan, cease to be or remain, for any purpose whatever, a street. * * * But in all cases where any such street is, at the time of the filing of such permanent map, actually open and in public use, such part or portions thereof as are included within the boundaries of any square or plot of ground made by the intersection of streets, avenues or roads laid out by the local authorities upon the permanent map or plan of said city, shall, ever after any of the streets, avenues or roads bounding such square or plot shall be opened, cease to be or remain for any purposes whatever, a street * * * and the owner in fee of the land or soil within the boundaries * * * thereof may thereupon inclose, use and occupy the same as fully as if the same had not been laid out, established or used." From this it is clear that, until the map required by this section is filed, there is no authority for the owner of the fee of the land or soil to occupy the same as if it had not been a street. Thus the time specified in this section when the occupancy of the soil of the abandoned street is authorized is further evidence that the act does not of itself extinguish the easements that survive a public abandonment, merely, of a highway accruing under authority other than of chapter 1006 of the Laws of 1895; nor does anything else in the statute change such interpretation. This conclusion renders it unnecessary to pass upon the further points raised by the city in opposition to the motions, which must be denied. Settle order on notice.

Argued before VAN BRUNT, P. J., and HATCH, RUMSEY, PATTERSON, and INGRAHAM, JJ.

Joseph A. Flannery, for appellants.
John P. Dunn, for respondent.

INGRAHAM, J.   The appellants, the owners of a lot of land upon a street known as Monroe or Morris avenue, which for many years has been open as a public street, applied to the court by a petition under section 14 of chapter 1006 of the Laws of 1895, asking that the commissioners of appraisal and estimate appointed in this proceeding be directed to estimate and determine the compensation which shall justly be made to them for loss or damage sustained by the discontinuance or closing of the said Morris avenue, upon which the appellants' property abuts. It appeared in this proceeding that Morris avenue, upon which the appellants' land abutted, has been for many years a public street, and used as such, but that the street had not been opened under any proceeding instituted by the city of New York; that by chapter 545 of the Laws of 1890 provision was made for making and filing the maps and plans of the streets and avenues in the Twenty-Third and Twenty-Fourth wards of the city of New

York; and the commissioner of street improvement for the said wards was directed, within a time named, to complete the survey, maps, plans, and profiles of all the streets, roads, avenues, public squares, and places located and laid out, or thereafter to be located and laid out, in said territory, and that said maps and plans, upon being approved by the board of street opening of the city, and filed as provided for by the act, should be final and conclusive as to the location, width, grades, and class of streets, roads, avenues, public squares, and places exhibited on such maps, plans, and profiles. In pursuance of that act, maps and plans for the permanent location of the streets and avenues in the Twenty-Third and Twenty-Fourth wards were finally adopted on June 17, 1895, and filed December 17, 1895. By those maps a new street called "Morris Avenue" was laid out, but the old Morris avenue, the street or road upon which the petitioners' property abutted, was indicated upon such map as a street discontinued. Prior to the filing of this map, and on June 12, 1895, chapter 1006 of the Laws of that year became a law. By section 1 it was provided that:

"In each city containing according to the latest census a population of more than one million two hundred and fifty thousand inhabitants the local authorities may authorize in the manner hereinafter provided the discontinuance of such streets, avenues, roads, highways, alleys, lanes and thoroughfares therein as they may deem to be necessary in order to more effectually secure and preserve regularity and uniformity in the general and permanent plan of streets and avenues and public places therein."

By section 2 it was provided that:

"The local authorities authorized by law to lay out, open, extend, or improve streets, avenues and roads in any such city or district thereof and to make and file a map or plan showing the streets, avenues and roads so laid out, opened, altered, extended or improved, shall upon any map or plan so made and filed by them, designate only the streets, avenues and roads which they may determine to so lay out, open, alter, extend or otherwise improve as the permanent streets, avenues and roads in and for such city, or for the particular district or section thereof shown upon such map or plan, omitting therefrom all such former streets, avenues, roads, highways, alleys, lanes and thoroughfares which they may determine to discontinue or close. * * * Upon and after the filing of such map the streets, avenues and roads shown thereon shall be the only lawful streets, avenues and roads in that section of such city shown upon such map or plan, and all other former streets, avenues, roads, highways, alleys, lanes and thoroughfares theretofore laid out, dedicated or established not shown thereon, and which are not then actually open or in public use, shall from and after the filing of such map or plan cease to be or remain, for any purpose whatever a street, avenue, highway, road, alley, lane or thoroughfare, and the owner or owners of the fee of the land or soil within the boundaries thereof may thereupon enclose, use and occupy the same as fully as if the same had not been laid out, dedicated, established or used."

The question to be determined on this appeal is whether the filing by the municipal authorities of the city of New York of the map or plan of the Twenty-Third and Twenty-Fourth wards under chapter 545 of the Laws of 1890, before referred to, did, under section 2 of chapter 1006 of the Acts of 1895, discontinue the street shown on the map as the old Morris avenue; and I think that the filing of the map did, as a fact, operate to discontinue the existing street under this provision. Section 1 of the act gives the municipal authorities of the cities mentioned therein the power to discontinue public streets or

thoroughfares in the manner thereafter indicated. Section 2 then provides that the local authorities authorized by law to lay out, open, extend, alter, or improve streets, avenues, or roads in any city or district, and to make or file a map or plan showing such streets, avenues, and roads so laid out, shall, upon any map or plan so made (that is, upon a map or plan not made under the authority of section 1, but under authority conferred upon them by other provisions of law), designate only the streets, avenues, or roads which they may determine to lay out, open, or improve as permanent streets or avenues in and for such city, or a particular section and district thereof; and when the local authorities, under existing provisions of law, made and filed a permanent map, showing the permanent roads or streets for a city, or a particular district therein, they were directed to show upon such map or plan only the streets or avenues which should be the permanent streets and avenues. The statute then provides that upon and after the filing of such map the streets, avenues, and roads shown thereon shall be the only lawful streets, avenues, or roads in that section of the city to which such map or plan relates; and all other former streets, avenues, or roads shall, from and after the filing of such map or plan, cease to be or remain for any purpose whatever a street, avenue, or road. It would seem to be the clear intention of the legislature to provide that, when the permanent plan of a city is finally adopted by the municipal authorities, all streets or roads not shown upon the plan as permanent streets or avenues should be discontinued as public streets; and thus when the local authorities, under the power granted by chapter 545 of the Laws of 1890, filed their plan or map of the Twenty-Third and Twenty-Fourth wards of the city of New York, locating upon that plan or map certain permanent streets and avenues, all such streets and avenues not therein designated as permanent streets or avenues by operation of this section became discontinued as public streets and avenues. This construction gives effect to both of the acts, and would seem to be necessary for the proper development of these outlying districts of the city of New York. It was essential that this Morris avenue, as it existed before the making of this permanent plan, should be discontinued, as it was inconsistent with the plan of the streets and avenues in that locality as finally adopted, and there can be no reason why it should be continued.

We also think that merely tracing upon this map the location of the old streets, and marking them as streets discontinued, was a substantial compliance with the statute which directed the municipal authorities to designate only the streets, avenues, and roads which they might determine to so lay out or improve as the permanent streets and avenues of that portion of the city. The fact that there appeared upon this plan the permanent streets, and also the lines of existing streets, to show their relation to the new streets, plainly indicating that such old streets were to be discontinued, and therefore to be no longer used by the public as permanent streets or highways, did not affect the operation of the provisions of law closing those streets not designated upon the plan as permanent streets of the city. The plain intention of the legislature, by this enactment, was, we

67 N.Y.S.—39

think, to allow a permanent plan to be made, upon which should be indicated the permanent streets or avenues of the city. This the plan did, and it was those streets not thus designated on the map as the permanent city avenues and streets that were to be discontinued as such streets. We think, therefore, that the filing of the plan by the municipal authorities discontinued this old Morris avenue, upon which the plaintiffs' property abuts, as a public street, and that the owners of the property abutting on the street were entitled, under the act of 1895, to compensation from the city for all injuries that they sustained in consequence of a discontinuance of this avenue or street as a public street. Section 3 of the act of 1895 applied only to proceedings to discontinue a street or avenue laid out upon the permanent plan adopted as such, and as this old Morris avenue was never indicated upon such permanent plan the provisions of this section did not apply. When the municipal authorities commenced this proceeding to open Morris avenue, as laid out upon the permanent map or plan of this portion of the city before referred to, as a permanent street to be opened, the owners of property abutting on the closed street were entitled, under section 14 of the act of 1895, to have the commissioners of estimate and assessment ascertain and determine the compensation which should justly be made for any loss or damage to the property occasioned by the discontinuance or closing of the old Morris avenue upon which their property abutted.

The court below denied the application upon the ground that the filing of the map and plan of this portion of the city under the Laws of 1890 did not have the effect of closing the streets, under section 2 of the act of 1895, and that the petitioners' easement of light, air, and access in the old street was not affected by that closing of the street. It is not necessary to determine upon this application whether the appellants are entitled to damages for the interference with their private easement in this discontinued street. It is for the commissioners to ascertain the damage that they have sustained in consequence of the discontinuance of Morris avenue as a public street or highway, and their determination of that question is subject to review. The legislature intended that the appellants should be compensated for the damage that they should sustain by and in consequence of the discontinuance or closing of this street or avenue, and it is this damage that the appellants were entitled to have estimated and determined by the commissioners in this proceeding.

We think the order appealed from should be reversed, with $10· costs and disbursements, and the motion granted, with $10 costs.

RUMSEY, PATTERSON, and HATCH, JJ., concur. VAN BRUNT, P. J., dissents, for reasons stated in opinion of court below.

HATCH, J. I concur in the views expressed by Mr. Justice INGRAHAM in his opinion herein, and I am also of the opinion that his construction of the acts in question has received the sanction both of this court and of the court of appeals. In re Mayor, etc., of city of New York, 28 App. Div. 143, 52 N. Y. Supp. 588, affirmed in 157 N. Y. 409, 52 N. E. 1126. The record in that case which was before

this court on the appeal discloses that the map then in question related to Gerard avenue, between 168th street and 169th street, as laid down on section 9 of the final pans of the 23d and 24th wards, filed November 2d, 1895. In construing chapter 1006 of the Laws of 1895, as to the effect of the filing of the map, Mr. Justice Patterson, writing the opinion of the court, says (page 146, 28 App. Div., and page 589, 52 N. Y. Supp.):

"That much of Gerard avenue became closed by the filing of the map, and thus the respondents' easements of light, air, and access to their Gerard avenue frontage were, in legal effect, taken away."

An appeal from this decision was permitted, and certain questions were certified for review, the first of which was as follows:

"First. Was the effect of chapter 1006 of the Laws of 1895, taken in connection with the action taken by the commissioner of street improvements of the Twenty-Third and Twenty-Fourth wards of the city of New York, and the board of street opening and improvement of said city, to discontinue and close that part of Gerard avenue, in the Twenty-Third ward of the city of New York, abutting on the respondents' lands between One Hundred and Sixty-Eighth and One Hundred and Sixty-Ninth streets, * * * so as to extinguish the easements of the respondents therein."

This question presents the identical subject now before us for determination, except as to the particular street. The map now before us is a part of the same final plans of the 23d and 24th wards, to wit:

"Extract from Section 14 of the Final Maps of the 23rd and 24th wards, adopted June 17, 1895. Filed December 17th, 1895."

It is shown by the record in Re Mayor, etc., of City of New York, supra, that the section there in question was also adopted June 17, 1895, but was filed November 2, 1895.

The court of appeals did not answer the question certified to it categorically, but said:

"We think that the provisions of chapter 1006 of the Laws of 1895 are within the constitutional powers of the legislature, and that the order in this case should be affirmed. * * * We have not thought it necessary to enter upon a discussion of this question, for the reason that the very able opinion written below, in which we fully concur, covers all the points involved."

These cases definitely determine that the effect of the filing of the maps in question was to close and discontinue the old street known as "Morris Avenue," and to take away the appellants' easements of light, air, and access therein and thereto as effectually as in the case of Gerard avenue.

I am of the opinion, also, that chapter 712 of the Laws of 1896, entitled "An act in relation to the final maps, plans and profiles of the Twenty-Third and Twenty-Fourth wards of the city of New York," has the effect to remove any objection to the maps and plans in question which might have existed by reason of the failure of the authorities to follow technically and exactly the requirements of the statutes providing therefor, and ratified and confirmed the same in all respects. It includes in its provisions, in express terms, sections 1 to 28, inclusive, of the final maps and profiles of the 23d and 24th wards of the city of New York; and while the language of the act is confined to the opening, acquiring, laying out, and establishing streets, it, in terms, provides, that:

"Every provision of law in relation to the laying out and establishment of
said streets, avenues, roads, public squares, parks and places, * * * and
in relation to the making and filing of the final maps and profiles thereof, shall
hereafter be deemed to have been complied with."

As there is no limitation or restriction in the act applicable to this
subject, and as its evident scope was the whole scheme embodied in
the maps, plans, and profiles adopted for said wards, and filed for
the purpose of perfecting and establishing the system of new streets
and the discontinuance of old ones, it seems to me that it clearly
removes any doubt as to the purpose and effect of the act.

RUMSEY and INGRAHAM, JJ., concur.