THE PEOPLE OF THE STATE OF NEW YORK ex rel. WILLIAM NELSON,
Appellant, v. ISAAC M. MARSH and Others, Commissioners
Appointed under Chapter 888 of the Laws of 1869, for Drain-
age of Lands, and Others, Respondents.

*Statute of Limitations — mandamus to compel an assessment to pay bonds issued by
drainage commissioners — it is a "special proceeding" — it is barred by the ten.
years' statute.*

In 1869 a proceeding was begun under chapter 888 of the laws of that year for
the drainage of certain lands in Richmond county. In 1872 the commissioners
appointed in the proceeding issued a number of certificates of indebtedness
which contained a clause making them payable July 1, 1875, or sooner, upon
the completion and collection of the assessment as provided for in the Drain-
age Act. These certificates were subsequently exchanged for bonds, issued
in 1872, which, by their terms, were payable on July 1, 1878, "or sooner,
upon the completion of the assessment for the drainage aforesaid and the col-
lection thereof, with interest on said sum at the rate of seven per cent." In
1873 the commissioners stopped work, and in 1878 they passed a resolution
instructing their counsel to take proceedings to dissolve the commission. All
matters in any way pertaining to the proceedings terminated in November,
1877.

In June, 1898, the holder of four of the bonds, issued in exchange for the cer-
tificates of indebtedness, obtained an alternative writ of mandamus to compel
the drainage commissioners to levy the assessment provided for by the Drain-
age Act and to collect so much thereof as should be sufficient to pay the several
evidences of indebtedness.

No facts were alleged explaining or excusing the relator's delay in instituting
the proceeding.

*Held,* that the court would have been justified in dismissing the writ as a matter
of discretion;

That the mandamus proceeding was a special proceeding within the meaning of
section 414 of the Code of Civil Procedure, which prescribes that the Statute
of Limitations contained in that Code shall apply "to a civil action or special
proceeding;"

That section 388 of the Code of Civil Procedure, providing, "an action, the
limitation of which is not specially prescribed, * * * must be commenced
within ten years after the cause of action accrues," governed the proceeding,
and that the relator's right to maintain it was consequently barred by the
Statute of Limitations.

APPEAL by the relator, William Nelson, from a final order of the
Supreme Court, made at the Richmond Special Term and entered
as a judgment against the relator, pursuant to section 2082 of the

Code of Civil Procedure, in the office of the clerk of the county of Richmond on the 25th day of October, 1900, after the verdict of a jury in favor of the defendants, rendered by direction of the court upon a trial at the Richmond Trial Term, dismissing the proceedings on the merits and directing that no peremptory writ of mandamus be issued, and that said order be docketed as a judgment; also from the order directing a verdict for the defendants, and an order bearing date the 18th day of October, 1900, denying the relator's motion for a new trial made upon the minutes.

*John R. Dos Passos* [*John Murray Mitchell* and *Samuel W. Bower* with him on the brief], for the appellant.

*William Allaire Shortt* and *George J. Greenfield* [*A. D. Greenfield* with them on the brief], for the commissioners, respondents.

*George J. Greenfield* [*George L. Rives* and *George L. Sterling* with him on the brief], for the city of New York, respondent.

*W. W. MacFarland*, for the respondents.

GOODRICH, P. J.:

In June, 1898, the relator obtained an order directing the issuance of an alternative writ of mandamus commanding the individual defendants who had been appointed commissioners under chapter 888 of the Laws of 1869 (amdg. R. S. pt. 3, chap. 8, tit. 16), commonly known as the Drainage Act, and also the city of New York, as successor of the town of Southfield, Richmond county, and the supervisors of said county, to levy the assessment provided for in said act and the acts amendatory thereof, and to proceed to collect so much of such assessment as should be necessary to pay certain certificates or evidences of indebtedness and interest thereon, the principal being $4,000 and the interest $8,106, such certificates having been issued by the said commissioners under the order of the County Court of Richmond county, in July, 1872, for money borrowed by them to carry on certain drainage improvements in the town of Southfield, and requiring the commissioners, if any preliminary acts or proceedings were necessary toward the payment of said certificates, to take such acts.

The city and the commissioners filed separate returns to the writ, in which, among other defenses, they set up the following : " That the alleged cause of action of the relator, plaintiff herein, and of his vendors and prior owners and holders of the said bonds, set forth in said alternative writ, and their right to the relief herein demanded and to enforce the remedy herein sought by the said writ of alternative mandamus, accrued more than six years, more than ten years and more than twenty years before the commencement of this proceeding. That during all that time they have taken no steps or proceedings to prosecute or enforce their said rights or remedies, but have been guilty of gross negligence and *laches* in the same, and are now barred therefrom under the Statute of Limitations and by equitable rules applicable to the same."

The issues came on to be tried at Richmond Trial Term, Mr. Justice KEOGH presiding. At the close of the relator's evidence the defendants moved for the direction of a verdict in their favor. The relator moved for permission to go to the jury on various questions of fact, but the court denied the motion and directed a verdict for the defendants and the relator excepted. The verdict was entered and the relator moved for a new trial on the minutes and to set aside the verdict. This motion was denied and the relator excepted. From the judgment and orders appeal comes to this court.

While the record is voluminous and the briefs elaborate, the facts may be stated very concisely. In August, 1869, certain residents of Richmond county presented to the county judge of that county a petition for the appointment of commissioners under the Drainage Act, and the county judge appointed Messrs. Barton, Root and McLean as commissioners to determine whether, in order to drain certain land, described in the petition, it was necessary that a ditch or drain for the passage of water should be opened through adjacent lands and whether it was necessary for the public health that the land named in the petition should be drained. The commissioners met and after viewing the lands reported in favor of draining the same and of the necessity of opening ditches on adjacent lands. This report was dated and filed in June, 1870. In May, 1871, the commissioners resolved that additional lands ought to be included in the drainage district, and in September, 1871,

application was made to the County Court for such inclusion, and the court appointed the same commissioners as before.

Meantime, in July, 1871, the commissioners applied to the County Court for permission, and were authorized, to borrow $20,000 to carry on the work and to issue certificates or " evidence of indebtedness " in a form set out in the order, in which the precise date of maturity was left blank. The certificates, however, which were dated June 29, 1872, contained a clause making them payable July 1, 1875, or sooner upon the completion and collection of the assessment as provided in the Drainage Act (See §§ 10, 11, as amd.). Four of these certificates, each for $1,000, which were in manuscript, were issued and came into the hands of the relator, for value. They were afterward exchanged for bonds which were issued in pursuance of an order of the county judge, made in June, 1872, authorizing the commissioners to borrow $40,000 and issue bonds therefor. It may also be noticed that under several orders made by the county judge the commissioners were authorized to borrow in all about $165,000, so that the amount involved in this litigation amounts with interest to about half a million of dollars. The bonds were by their terms payable on July 1, 1878, " or sooner upon the completion of the assessment for the drainage aforesaid and the collection thereof with interest on said sum at the rate of seven per cent." Since that time the defendants Marsh and Christopher have been appointed commissioners in place of Barton and McLean. In June, 1872, the two proceedings were consolidated by order of the County Court.

At the threshold of our examination we are confronted with two questions, *laches* and limitations. As to *laches* it appears, and the relator's counsel says in his brief, that the work of drainage was " practically accomplished " before the commencement of the proceeding in *Matter of Marsh* (71 N. Y. 315), which was begun on June 10, 1875. (See *Matter of Marsh,* 10 Hun, 50.) Defendants' counsel says in his brief that the commissioners stopped work in 1873, and such is the evidence also. The Court of Appeals decided the *Marsh Case (supra)* in November, 1877. After 1873 nothing appears to have been done in regard to making the drains or taking proceedings for the levying of any assessment to pay the bonds, and the commissioners, on May 23, 1878, passed a resolution

instructing counsel to take proceedings for "dissolving this commission." Meanwhile the drains were falling into decay and, being stopped up, were flooding the lands in various places.

The validity of the bonds and the legality of their issue had been already determined in a proceeding for, and the granting of, an alternative writ of mandamus issued out of the Supreme Court, in March, 1873, by which the commissioners were ordered to issue the bonds or show cause to the contrary. In April the court issued a peremptory writ ordering the commissioners to issue the bonds, and they filed their return to the writ, showing that in compliance with the writ they had issued them. Meanwhile the ownership of some of the lands has changed. The United States government has acquired title to other parts of them, and the situation of parties interested has thus materially altered, yet during the twenty-three years which followed the abandonment of the enterprise the relator has slept upon his rights and only begun this proceeding on June 28, 1898. Even if he was lulled into inaction by the proceedings under review in *Matter of Marsh* (*supra*), that proceeding was terminated in November, 1877. A more palpable case of *laches* can hardly be stated, and the court would have been justified in dismissing the writ as matter of discretion. It appears, however, that the court directed the judgment on the merits, so that it becomes unnecessary to consider whether or not there was a fair exercise of discretion.

The Statute of Limitations is a bar to the relator's right to mandamus. Section 414 of the Code of Civil Procedure applies the provisions of chapter 4, entitled, "Limitation of the Time of Enforcing a Civil Remedy" (§§ 362–415), "to a civil action or special proceeding." It was held in *People ex rel. Sheridan* v. *French* (31 Hun, 617; 13 Abb. N. C. 413; 119 N. Y. 630), that a proceeding by mandamus to compel the payment of the relator's salary is a special proceeding within section 414, and that the proceeding is barred unless commenced within the same period of time that an action might have been commenced for the same demand. The court also held that a proceeding delayed beyond the statutory limit indicated *laches* requiring the dismissal of the writ.

If then the relator's right to institute the present proceeding accrued before the period prescribed by the statute, he is barred thereby. I do not find that the relator's cause of action is specific-

ally prescribed in sections 381 to 387, inclusive, and section 388 provides that "an action, the limitation of which is not specially prescribed * * * must be commenced within ten years after the cause of action accrues." What then is the cause of action which this proceeding is brought to enforce? Certainly it is not a cause of action against any of the defendants to recover the amount of the bonds, and it is not an action or proceeding upon a sealed instrument, in which case the limitation is for twenty years (Code Civ. Proc. § 381). It is not claimed to be other than the right stated in the alternative writ which commanded the commissioners to "levy the assessment provided for" by the Drainage Act, and "to collect so much thereof as shall be sufficient to pay the several evidences of indebtedness" in question, "and if any acts, steps, proceedings or resolutions are necessary preliminary to such assessment, that you perform such acts, take such steps and proceedings and make such resolutions and do and perform everything necessary towards the payment of and to pay the demand due petitioner," and the city and supervisors of Richmond county, to "take such proper steps and make such resolutions as may be proper and in conformity to law to cause the said amount due on said evidence of indebtedness to be paid to said William Nelson forthwith." This can mean only that the commissioners were required to take steps to levy and collect the assessment for damages, and this is the cause of action stated in the petition by the relator.

The Drainage Act (§ 9) provides that any person whose land is taken in the construction of the ditch shall be paid by the commissioners on or before the commencement of the work the value of the land so taken and such other injuries as the party may sustain, and if the commissioners and the owner cannot agree upon the compensation and damages the commissioners shall proceed to acquire title to the said easement upon and across the land in the manner provided by the Railroad Law (Laws of 1850, chap. 140). Turning to that act we find that it provides. (§§ 15–18, as amd.) for the appointment of commissioners of appraisal, the proceedings before them and the making, filing and confirmation of their report, the payment or deposit by the railroad company of the sums to be paid to owners as compensation, and thereupon only is the railroad company "entitled to enter upon, take possession of and use the said land." Applying these pro-

visions to the present proceeding, we find from the evidence that the entire work was completed or about completed in 1873, when the commissioners "stopped work" on account of "legal trouble." In June, 1875, however, they presented the petition in the *Marsh Case* (10 Hun, 49), in which it was stated that it had become necessary to lay drains and channels over the lands of various persons and to obtain easements therefor and asking the appointment of commissioners to ascertain and appraise the compensation to be made to such owners. It was not, however, till June, 1876, that the order was made appointing appraisers to ascertain and appraise the compensation to be made to the landowners. An appeal was taken to the Court of Appeals, which reversed the order (*Matter of Marsh*, 71 N. Y. 315) on the ground that the petition did not state facts sufficient to confer jurisdiction upon the court to make the order. This seems to have been the last legal proceeding towards any assessment upon the adjacent lands until the institution of those now under review, which were commenced in June, 1898.

Whatever cause of action and right to enforce it the relator has under the circumstances set out in the allegations of the alternative writ, he certainly had more than ten years prior to this proceeding, and he does not allege any new facts explaining his delay in making this application so as to take the case outside of the statute.

Holding these views both as to *laches* and limitations, it becomes wholly unnecessary to examine the other questions argued by the counsel for. the respective parties.

The judgment and order should be affirmed, with costs.

BARTLETT and WOODWARD, JJ., concurred; HIRSCHBERG, J., dissented.

Judgment and order affirmed, with costs.