THE PEOPLE OF THE STATE OF NEW YORK ex rel. FRANCIS B. CHEDSEY, FRANK LYNCH and FRANK B. CHEDSEY, as Executor of the Last Will and Testament of JOHN A. NOONAN, Deceased, Relator, *v.* THE CITY OF NEW YORK, and WILLIAM P. BURR, as Corporation Counsel of the City of New York, Respondent.

(Supreme Court, Bronx Special Term, November, 1918.)

Statute of Limitations — when a bar to petitioners' claim for damages for closing street — condemnation proceedings.

Where petitioners' claim for damages sustained by the closing of a street in front of their real property in the city of New York and the opening of a new street between St. Ann's avenue and Brook avenue, in the borough of The Bronx, accrued on the 13th of September, 1897, prior to which date the physical work done on the new street was plain notice to them that the old street was closed, because the location of the new street through the block in question was so near to the location of the old street that no one would have understood that both streets were to be continued, and according to the

Supreme Court, November, 1918.        [Vol. 105.

blue prints attached to the petition herein the new street over-
laps in part the old street at the Brook avenue end of the
block while at the St. Ann's avenue end of the block they are
distant from each other less than the width of the street,
petitioners are chargeable with notice that the location of the
new street had been slightly shifted and that the old street had
been closed, and the application herein, made more than twenty
years after the accrual of the claim, will be denied upon the
ground that the Statute of Limitations is a bar.

MOTION for a peremptory writ of mandamus direct-
ing William P. Burr, as the chief law officer of the city
of New York, to make application to this court for the
appointment of commissioners to ascertain and deter-
mine the compensation which should be made for
easements destroyed by the closing of East One Hun-
dred and Forty-first street between St. Ann's avenue
and Brook avenue, in the borough of The Bronx.

Hartley G. Pelletier, for relator.

William P. Burr, corporation counsel (Joel J.
Squier and James Regan Fitzgerald, of counsel),
for respondent.

GIEGERICH, J.   The petitioners seek a peremptory
writ of mandamus directing the corporation counsel,
as the chief law officer of the city of New York, to
institute a proceeding to determine the compensation
which should be paid to them for easements destroyed
by the closing of East One Hundred and Forty-first
street, between St. Ann's avenue and Brook avenue, in
the borough of The Bronx.   Among other things the
petition alleges that long prior to June 15, 1894, One
Hundred and Forty-first street as it then existed
was a public street in open use and was the only street
running from Brook avenue to St. Ann's avenue
between One Hundred and Forty-second street and

One Hundred and Thirty-ninth street, and that the petitioners owned and still own property fronting upon the street as it then existed. The petition further alleges that on or about the 15th day of June, 1894, the commissioner of street improvements made a new map or plan of that section of the city and that among other streets omitted from that plan was old East One Hundred and Forty-first street between St. Ann's avenue and Brook avenue. The petition further states: " That in accordance with the layout on said section 2 of the said final maps on or about the 13th day of September, 1897, the public authorities of the city of New York duly laid out, constructed and established a new street between St. Ann's avenue and Brook avenue, known as One Hundred and Forty-first street, and such street was the first street bounding the block in which the part of old One Hundred and Forty-first street was situated to be regulated, paved and graded in accordance with said map or plan filed on the 23d day of March, 1894, and as so regulated, paved and graded was accepted by the city of New York on or about the said 13th day of September, 1897; that on the said construction or physical opening of the new street known as One Hundred and Forty-first street old One Hundred and Forty-first street became abandoned, closed and discontinued as a street of the city of New ,York." It is also stated that on or about the 27th day of November, 1917, a claim was made by the petitioners against the proper city authorities for damages sustained by the closing of old One Hundred and Forty-first street in front of the property referred to. On behalf of the defendants the Statute of Limitations is set up, it being pointed out that between the dates September 13, 1897, and November 27, 1917, a period of more than twenty years had elapsed. I am of the opinion that the

proceeding is barred by the statute. On behalf of the petitioners the argument is made that they have never received such notice of the closing of the old street and the consequent interference with their easements as to set the statute running. They cite as their leading authority *Matter of City of New York (Newton Avenue)*, 219 N. Y. 399, but that case was apparently very different in its facts from what I understand the present case to be. The court in that case said (p. 406) : " The owner of this land had no notice, actual or constructive, of the filing of the map. Until the physical invasion of his easements in 1914, he had no notice of an intent to close the existing highway." And at page 407 : " The Albany Post road, though nominally closed in 1895, was not physically closed until 1914." The theory of the decision in the *Newton Avenue* case and the similar decision in the *Grand Boulevard Concourse case*, 212 N. Y. 538, is that owners cannot be charged with notice merely by the taking of steps by the city authorities which do not openly and visibly affect the property in question, such as the filing of a map, unless actual notice is given to owners of the proceeding. As the court pointed out in the *Boulevard* case, owners should not be required at their peril to keep track of the maps that define the public highways. In the present case, however, there is no question of the obligation of the owners of the property to keep track of maps, but merely to keep themselves informed as to what is going on about their property. According to the allegations of the petition, prior to the 13th day of September, 1897, and consequently more than twenty years before this application was made, the new One Hundred and Forty-first street was regulated, paved and graded in accordance with the map. This physical work done on the new street was plain notice to the owners that the old street

was closed, because the location of the new street through the block in question was so near to the location of the former street that it is inconceivable that any one should have understood that both streets were to be continued. According to the blue prints attached to the petition the new street overlaps in part the old street at the Brook avenue end of the block, while at the St. Ann's avenue end of the block they are distant from each other less than the width of the street, thus leaving between the two streets only a narrow wedge-shaped area having a width of less than a street width at the widest point. Under such circumstances I do not think there is any question but that the petitioners, as owners of the property affected, must be charged with notice that the location of the street had been slightly shifted and that the old street had been closed. At the latest, therefore, the claim of the petitioners accrued on the 13th day of September, 1897, and they had notice of the facts on or before that date. On that date at latest, therefore, the statute must have commenced to run against their claim if there is any Statute of Limitations that applies. The argument seems to be made on behalf of the petitioners that there is no limitation provided by law against a claim of the kind here sought to be asserted. One case cited in support of this proposition is *Matter of City of New York (Newton Avenue), supra,* but I can find nothing in that opinion to the effect that no Statute of Limitations applies in such cases. The discussion there dealt with the questions what limitation applied and what facts start the period of the limitation running. Neither can I find in *Matter of Clark v. Water Commissioners,* 148 N. Y. 1, the other case cited, anything to support the proposition that no limitation was intended in that case. The court pointed out the reasons why the six-year limitation provided by section

382 could not be held to apply, and then went on to say that the only provision which might be applicable was the ten-year limitation of section 388, but dismissed the further consideration of that section because the ten years permitted had not expired before the proceeding had been commenced. In the present case it is unnecessary to consider whether a six-year or a ten-year or, for that matter, a twenty-year limitation applies, because the time elapsed exceeds any of those periods. That no limitation at all was intended to be provided against the assertion of such a right as the petitioners here seek to enforce is a proposition contrary to the well-established policy of the law of this state. Although the learned attorney for the petitioners does not state his theory for the apparent claim that no limitation is intended, it may be that he has in mind the principle recognized in some jurisdictions that some duties are of such a character that no Statute of Limitations runs against the remedy to enforce performance thereof, such, for instance, as the duty of an executor or administrator to account. In some jurisdictions it is held that the period for the limitation of the remedy to enforce the performance of that duty does not begin to run (at least until there is a termination or repudiation of the trust relation) because the trustee's duty to account is continuous and he cannot claim that his failure to do so at any moment of time sets the statute in motion or casts upon the persons interested in the estate the duty of demanding an accounting, but their right to demand it runs with his duty and may be asserted so long as his duty remains unperformed. 11 Am. & Eng. Ency. of Law (2d ed.), 1186. But even if it be assumed that the duty of the city authorities to take the action now sought to be compelled belongs to the class of duties just mentioned, still the petitioners' case is no better

because the rule referred to does not obtain in this state.     11 Am. & Eng. Ency. of Law (2d ed.), 1187, and cases cited.  The law of this state on the point is well illustrated in *Matter of Hale,* 6 App. Div. 411.  There the surrogate of his own motion had made an order that a citation issue requiring executors to file an intermediate account.  They pleaded the Statute of Limitations.  Against this plea it was argued that the act of the surrogate was not a special proceeding, but was the exercise of a power granted by the Legislature to the surrogate under section 2725, subdivision 4, of the Code, by which he was authorized of his own motion to require executors and administrators to render intermediate accounts when eighteen months had elapsed since letters had been issued and no account had been filed, and that the power so conferred was not subject to any time limitation.  The court expressed its conclusion on this point in the following words, viz.: " This, we think should be regarded as a judicial proceeding, and such, when not an action, is necessarily a special proceeding (*Matter of King,* 42 Hun, 607)," and accordingly held that, whether the six-year or the ten-year limitation was applicable, the proceeding was barred, as more than twelve years had passed before the surrogate acted.  It seems to me that in the present case there are still stronger reasons for refusing to recognize this as an exception to the general rule set forth in sections 388 and 414 of the Code and that, if no other limitation is provided, the ten-year limitation should be held to apply. It will be observed that the language employed by the court, in the case just above quoted, to describe the character of proceeding to which the statute was intended to apply is very sweeping.  This is certainly a judicial proceeding and, not being an action, is necessarily a special proceeding, and as such falls

within the provisions of the Code sections just mentioned. The application will therefore be denied, but without costs.

Application denied, without costs.