Matter of the Application of CHRISTIAN SCHEIBEL, for a Peremptory Writ of Mandamus Directed to WILLIAM P. BURR, as Corporation Counsel of the City of New York, etc., by Reason of the Closing and Discontinuance of Stewart Avenue.

(Supreme Court, Kings Special Term for Motions, September, 1919.)

Mandamus — when peremptory writ of, granted — condemnation proceedings — damages — highways — statutes — Statute of Limitations — " Closing Act " — Laws of 1895, chap. 1006.

The owner of property fronting on a street, though he may not own the fee of the highway, has rights therein which constitute property for which, if they be taken away, he must be compensated.

Upon the consolidation of the city of Brooklyn with the city of New York, Stewart avenue, located in Kings county, became legally closed under the provisions of chapter 1006 of the Laws of 1895, known as the " Closing Act."

Where a street is discontinued under the provisions of said " Closing Act," the private easements of abutting owners therein as well as the public easements are extinguished, but as said statute does not provide for giving either actual or constructive notice to the property owner that his rights are to be taken, so that he may assert his claims, a provision requiring an owner to present his claim within two years after the statute takes effect in all cases where the map had been filed prior to that time, is invalid.

A peremptory writ of mandamus to compel the corporation counsel of the city of New York to institute proceedings for the appointment of commissioners to determine the damages sustained by petitioner through the closing and discontinuance of Stewart avenue in Kings county pursuant to the provisions of said " Closing Act," section 4 of which requires said corporation counsel to apply for the appointment of commissioners, when streets have been closed and discontinued pursuant to the statute, will be granted.

APPLICATION for a writ of peremptory mandamus.

Frederick W. Hottenroth, for petitioner.

William P. Burr, corporation counsel (Joseph A. Solovei and Patrick S. MacDwyer, of counsel), opposed.

CROPSEY, J.   A mandamus is sought to compel the corporation counsel of the city of New York to institute proceedings for the appointment of commissioners to determine the damages sustained by the petitioner through the closing of Stewart avenue. Stewart avenue was located in Kings county and the petitioner claims it was closed and discontinued pursuant to the provisions of chapter 1006 of the Laws of 1895.   Section 4 of that act requires the corporation counsel to apply for the appointment of commissioners, when streets have been closed and discontinued pursuant thereto.   If this petitioner is entitled to relief the corporation counsel may properly be compelled, by mandamus, to initiate the proceedings called for by the statute. *People ex rel. Winthrop* v. *Delaney,* 120 App. Div. 801; affd., with modification not affecting this point, 192 N. Y. 533.

But the corporation counsel contends the petitioner is not entitled to any relief.   These contentions will now be considered.

His first contention is that Stewart avenue was not a public highway when the petitioner purchased his property and has not been such at any time since. On March 31, 1892, the petitioner purchased a plot of ground on the corner of Stewart avenue and Seventy-

third street. Stewart avenue had been opened as a public street in 1844, pursuant to the provisions of a local act of the legislature. Laws of 1843, chap. 47. This statute was enacted prior to the constitutional amendment in 1874 prohibiting local bills laying out streets, etc. Art. 3, § 18. But the corporation counsel contends that Stewart avenue was discontinued prior to 1892. And he refers to the provisions of chapter 311 of the Laws of 1861, which amend section 99 of article 4, title 1, chapter 16, part 1, of the Revised Statutes, and which read: " All highways that have ceased to be traveled or used as highways for six years shall cease to be a highway for any purpose." This provision was re-enacted as section 99 of chapter 568 of the Laws of 1890 (Highway Law) and is now found in section 234 of the present Highway Law. It has been construed to mean that the period of non-user shall be after the act of 1861 took effect. *Amsbry* v. *Hinds,* 48 N. Y. 57. But that is not material here. The claim of the corporation counsel is that because the records of the former town of New Utrecht, in which this highway was located, fail to show after the year 1875 the making of any repairs upon it it must have been discontinued. But there is no proof of any closing or discontinuance. On the contrary, the petitioner's statement that when he bought his property it was a main highway and much traveled is not denied. Moreover, a highway once shown to exist is presumed to continue until the contrary is shown. *City of Cohoes* v. *Delaware & Hudson Canal Co.,* 134 N. Y. 397, 407.

Another claim of the corporation counsel is that the provisions of chapter 1006 of the Laws of 1895 do not apply to Stewart avenue. It is true that when this statute was passed it did not apply to Stewart

avenue. The statute, by its terms, applied only to cities having a population of more than 1,250,000 inhabitants. And although it may have been passed because of certain conditions in that portion of Westchester county which had recently been annexed to the city of New York (*Reis* v. *City of New York,* 188 N. Y. 58, 69), it was, nevertheless, a general statute and though then applicable only to the city of New York it would become applicable to any other city in the future if its population amounted to the prescribed number. *Matter of Wallace Avenue,* 222 N. Y. 139, 148.

When Stewart avenue was opened it was in the town of New Utrecht. In 1874 the town survey commissioners' map was filed, pursuant to law, upon which the highways in that town and others were designated. And this map also indicated such existing highways as were to be discontinued. Among the latter was Stewart avenue. When the town of New Utrecht became annexed to the city of Brooklyn the act of annexation provided that all the streets as fixed by the maps duly made and filed should be continued as streets of the city. Laws of 1894, chap. 451, § 10. And when the city of Brooklyn became a portion of the city of New York on January 1, 1898, a similar provision was contained in the original charter. § 432.

The act of 1895 referred to provides that upon the filing of a map authorized by law all streets not shown thereon and which are not then actually open or in public use shall cease to be streets for any purpose whatsoever. And where a street not shown on the map is at the time of its filing actually open and in public use it shall cease to be a street for any purpose whatsoever when any one of the streets shall be opened which bounds the block in which the street to be discontinued is located. § 2. This provision requiring

one of the streets bounding the block to be opened
before the discontinuance is effective means physically
opened and not merely laid out. *Matter of City of
New York,* 192 N. Y. 459, 468; *Matter of City of New
York (Walton Avenue),* 131 App. Div. 696, 721; affd.,
197 N. Y. 518.

The section of Stewart avenue in question lies in
the block bounded by Sixth avenue, Seventh ave-
nue, Seventy-second street and Seventy-third street.
Seventh avenue between Seventy-second and Seventy-
third streets was physically opened August 21, 1893.
So the situation is this: At the time the Closing Act
of 1895 was passed the town of New Utrecht had
become a portion of the city of Brooklyn, and Seventh
avenue bounding the block in question was then physi-
cally open. The Closing Act, however, was not then
applicable to the city of Brooklyn for that city did
not have the specified population. But when the city
of Brooklyn became a part of the city of New York
(January 1, 1898) the provisions of the Closing Act
became effective in the *locus in quo.* See *Matter of
Wallace Avenue,* 222 N. Y. 139, 148. It was the same
as though the Closing Act had then been enacted.
See *Matter of City of New York (Walton Avenue),*
131 App. Div. 696, 703, 704; affd., 197 N. Y. 518; *Mat-
ter of City of New York (Newton Avenue),* 219 id.
399, 406. Hence it follows that Stewart avenue became
legally closed when the provisions of the Closing Act
became effective, namely, upon the consolidation of
the city of Brooklyn with the city of New York, Jan-
uary 1, 1898.

The further contention of the corporation counsel is
that the petitioner is barred by the Statute of Limita-
tions. Section 5 of the Closing Act (Laws of 1895,
chap. 1006) requires a property owner affected by the
closing of the street to present a claim to the comp-

troller " within six years after the filing of such map "
and provides that otherwise he " be forever barred
from claiming compensation for such closing or dis-
continuance." The same section also provides that
where the map has been made before the passage of
that act the property owner shall make his claim
" within two years after the passage of this act "
under like penalty. The language of this section does
not appear to cover the case of the discontinuance of
a street that has in fact been actually open and in
public use. But this may not be material if the require-
ment that the claim must be made within the specified
time be unconstitutional.

The owner of property fronting on a street, though
he may not own the fee of the highway, has rights in
it which constitute property and so he must be com-
pensated for them if they be taken away. *Egerer* v.
*N. Y. C. & H. R. R. R. Co.*, 130 N. Y. 108; *Story* v.
*New York El. R. R. Co.*, 90 id. 122; *Matter of Mayor*,
28 App. Div. 143, 151; affd., 157 N. Y. 409; *Gillender* v.
*City of New York*, 127 App. Div. 612. When a street
is discontinued under the provisions of chapter 1006,
Laws of 1895, the private easements of abutting
owners therein, as well as the public easements, are
extinguished. *Barber* v. *Woolf*, 216 N. Y. 7; *Astor* v.
*Thwaites*, 170 App. Div. 624. The rule under this
statute is different than under the statute considered
in *Holloway* v. *Southmayd*, 139 N. Y. 390.

The Closing Act in question does provide a method
for ascertaining the compensation to be paid to the
damaged property owners. But it must do more than
that. It must also provide for the " due process of
law." It must provide for giving either actual or
constructive notice to the property owner that his
rights are to be taken so that he may assert his claims,
if he wishes. The statute in question contains no such

provision. And for this reason the provision requiring an owner to present his claim within six years or be barred has been held to be invalid. *Matter of City of New York (Grand Boulevard)*, 212 N. Y. 538; *Matter of City of New York (Newton Avenue)*, 219 id. 399. It must follow that the provision requiring the claim to be made within two years after the act takes effect in all cases where the map had been filed prior to that time must likewise be invalid. The reasons underlying the decision in the one case apply with equal force and effect in the other.

But the corporation counsel contends that though these special limitations may be invalid the general Statute of Limitations is applicable and effective. And he cites *People ex rel. Chedsey* v. *City of New York,* 105 Misc. Rep. 119, which seems to support that view. This court, however, cannot appreciate how such a result can follow the decisions in 212 New York and 219 New York, just referred to. Those decisions were not predicated upon the fact that the limitation was one of only "six years." They were not based upon the question of any length of limitation. They did not hold that the limitation of *six* years was invalid but that one of ten years or twenty years would be valid. They held that the limitation was invalid not because it was of six years' length but because no limitation would be valid owing to the failure of the act to provide for the giving of notice to the property owner. And though the question was raised in the 212 New York case whether the balance of the statute might not also be unconstitutional the Court of Appeals has since held otherwise. *Barber* v. *Woolf,* 216 N. Y. 7; *Matter of City of New York (Newton Avenue),* 219 id. 399, 407. The opinion in the 219 New York case does mention that the owner in fact had no notice and this has been apparently used as the basis

for the decision in *People ex rel. Chedsey* v. *City of New York,* 105 Misc. Rep. 119. It is believed, however, that the language of the Court of Appeals was not intended to mean that the question turned on whether or not the property owner in fact had notice. This seems clear by the language in the 212 New York case at page 544: " If the act of 1895 makes no provision for such notice, the attempted limitation is without effect." And the general rule is that where a statute which seeks to deprive a person of his property is unconstitutional because it fails to provide for giving him notice and an opportunity to be heard the mere fact that he may actually have had notice is immaterial. In *Stuart* v. *Palmer,* 74 N. Y. 183, the court said (at p. 188): " I am of opinion that the Constitution sanctions no law imposing such an assessment, without a notice to, and a hearing or an opportunity of a hearing by the owners of the property to be assessed. It is not enough that the owners may by chance have notice, or that they may as a matter of favor have a hearing. The law must require notice to them, and give them the right to a hearing and an opportunity to be heard. It matters not, upon the question of the constitutionality of such a law, that the assessment has, in fact, been fairly apportioned. The constitutional validity of law is to be tested, not by what has been done under it, but by what may, by its authority, be done. The Legislature may prescribe the kind of notice and the mode in which it shall be given, but it cannot dispense with all notice."

The only other contention of the corporation counsel is that the petitioner has sustained no damage. But this is not apparent upon the papers. The petitioner swears that he has been damaged and the situation of his property would seem to bear out his assertion. He owns a plot with a frontage of about forty feet on

Stewart avenue and about eighty-nine feet on Seventy-
third street.   After he bought it he erected a house
fronting on Stewart avenue on about one-half the lot,
leaving the corner plot vacant.   Now with Stewart
avenue shut his access to the house has to be over the
vacant corner, thus interfering with his access and
also with his use of the corner. It would seem that he
might well establish some damage.   And whether it
be large or small is immaterial to the decision of this
motion.  *People ex rel. Winthrop* v. *Delaney,* 120 App.
Div. 801; affd., with modification not affecting this
point, 192 N. Y. 533.

A peremptory writ of mandamus should issue and
the petitioner should have fifty dollars costs.

Ordered accordingly.