In the Matter of the Application of CHRISTIAN SCHEIBEL,
   Respondent, for a Peremptory Writ of Mandamus, Directed
   to WILLIAM P. BURR, as Corporation Counsel of the City of
   New York, Appellant, Commanding and Enjoining Him to
   Institute Proceedings to Ascertain the Compensation Due the
   Said Christian Scheibel, under and Pursuant to Chapter 1006
   of the Laws of 1895, by Reason of the Closing and Discon-
   tinuance of Stewart Avenue, in the Thirtieth Ward, in the
   Borough of Brooklyn, County of Kings, City and State of
   New York.

Second Department, June 25, 1920.

Municipal corporations — street closing, city of New York — con-
   stitutional law — effect of filing map upon rights of property
   owners — limitation on claim for compensation for street closing.

Although section 5 of the Street Closing Act (Laws of 1895, chap. 1006)
   applicable to the city of New York allows a property owner affected by
   the closing of a street to present a claim for compensation to the comp-
   troller " within six years " after the filing of the map showing new or
   altered streets, such limitation is unconstitutional where there is no notice
   to the occupant of lands affected by a street closing.

When a street is physically closed, the right of an adjoining property owner
   to compensation accrues and he does not have to keep track of maps
   which may be filed, but merely to keep informed as to what is going on
   alongside his premises.

Statutes construed, and *held*, that a map of streets in the former town of New
   Utrecht filed by the town survey commission in 1874 was not such a map
   as was contemplated in the Street Closing Act.

However, where a property owner affected by the closing of such street did
   not file his claim until over fourteen years after the street was closed, his
   right to compensation is barred by the Statute of Limitations which began
   to run when the street was actually closed, irrespective of whether his
   right is governed by the six- or ten-year statute.

REARGUMENT of an appeal by William P. Burr, as corpora-
tion counsel of the city of New York, from an order of the
Supreme Court, made at the Kings County Special Term and
entered in the office of the clerk of the county of Kings on the
4th day of October, 1919, granting a writ of mandamus requir-
ing the corporation counsel to institute proceedings under the
Street Closing Act (Laws of 1895, chap. 1006) to determine the
compensation due said Christian Scheibel for closing Stewart

avenue originally in the town of New Utrecht. (See 192 App. Div. 888.)

The opinion of the Special Term is reported in *Matter of Scheibel* v. *Burr* (108 Misc. Rep. 551).

*Patrick S. MacDwyer* [*William P. Burr, Corporation Counsel, and Joseph A. Solovei* with him on the brief], for the appellant.

*Frederick W. Hottenroth* [*Arthur D. Lyons* with him on the brief], for the respondent.

PUTNAM, J.:

By a map filed in 1839 the streets, avenues and public squares of the sixth, seventh, eighth and ninth wards of the former city of Brooklyn were laid out in a regular numbered series extending to the New Utrecht town line. New Utrecht then had the few streets and roads of an agricultural community. Among such streets was Stewart avenue, first shown on a map of property of the heirs of Jane Smith, filed in 1834 with the clerk of Kings county. It was subsequently laid out and extended by a special act (Laws of 1843, chap. 47).

A town survey commission of Kings county was formed by Laws of 1869, chapter 670. The supervisors of the five county towns and William J. Osborne, chairman of the board of supervisors of said county, were made a board of commissioners to lay out a permanent street plan for those towns—" conforming to the avenues and streets and plan of the city of Brooklyn, as now terminated at the city line, as nearly as may be practicable and judicious." (§ 4.) The commission could not condemn land, or close streets then existing, but only lay out and design a plan to aid in establishing a system of roads and streets as the same might from time to time be taken and dedicated to public use in the future expansion of the environs of Brooklyn. (*Matter of City of New York* [*Saratoga Ave.*], 226 N. Y. 128.) Existing streets were not to be closed. The map filed by such commission, showing such plan for New Utrecht, bore a notation, stating: " Existing street and road lines and property lines are dotted, property lines and names being taken without search of title and approximately correct." The word " names " meant the designation of landowners, as the existing streets and roads were not named on such maps. The

route of Stewart avenue was shown by dotted lines extending toward Fort Hamilton. It intersected Seventy-third and Seventy-second streets, between Sixth and Seventh avenues. The town survey commission filed such map on June 17, 1874.

Stewart avenue long continued an opened, traveled street. On March 31, 1892, petitioner acquired a lot at the corner of Stewart avenue and Seventy-third street of about eighty-nine feet on Stewart avenue with a breadth of forty feet, including the grantor's rights in and to Seventy-third street and Stewart avenue lying in front of and adjoining said premises, to the center lines thereof, respectively. Seventy-third street had been laid out by petitioner's grantor, but had not yet been acquired by the municipality. The petitioner built a house on half his lot, and continued to occupy these premises. His bills for taxes thereon described the lot as situate on Stewart avenue.

The town of New Utrecht had acquired, as public streets, Seventh avenue on March 31, 1891, and Seventy-second street on June 18, 1894. On July 1, 1894, New Utrecht became part of Brooklyn (Laws of 1894, chap. 451). Section 10 thereof provided that all streets as fixed by the maps duly made and filed should be continued as streets of the city. It was made part of Greater New York on January 1, 1898 (Laws of 1897, chap. 378). Petitioner's premises are now known as lot No. 74, in block 5911, thirtieth ward of the borough of Brooklyn.

In the grading of Seventy-second street, completed December 30, 1902, curbstones were placed along the crossing over Stewart avenue, so as to close it to vehicles; and by grading work completed June 1, 1904, the city likewise carried the Seventy-third street curbing across Stewart avenue. Thus Stewart avenue became physically closed, and its lines obliterated. Over fourteen years after such physical closing, and on July 22, 1918, petitioner filed with the comptroller of the city of New York a written statement of claim and demand for compensation. Thereupon, on October 21, 1918, he applied for a writ of mandamus to require proceedings taken under the Street Closing Act (Laws of 1895, chap. 1006) to ascertain the petitioner's compensation by reason of the closing and discontinuance of Stewart avenue. The order appealed from granted such relief.

The Street Closing Act (Laws of 1895, chap. 1006), which purported to apply to cities of more than 1,250,000 inhabitants, authorized (§ 2) the local authorities to make and file a map or plan showing new or altered streets or avenues, " omitting therefrom all such former streets, avenues, roads, highways, alleys, lanes and thoroughfares which they may determine to discontinue or close. * * * Upon and after the filing of such map, the streets, avenues and roads shown thereon shall be the only lawful streets, avenues, and roads in that section of such city shown upon such map or plan, and all other former streets, avenues, roads, highways, alleys, lanes and thoroughfares theretofore laid out, dedicated or established not shown thereon, and which are not then actually open or in public use, shall from and after the filing of such map or plan cease to be or remain, for any purpose whatever, a street, avenue, highway, road, alley, lane or thoroughfare." The act also declared: " The provisions of this section shall apply to all streets, avenues, roads, highways, alleys, lanes and thoroughfares or parts or portions thereof which have not been retained or shown upon any map or plan heretofore made and filed by or on behalf of the local authorities of such city as part of the permanent system of public streets, avenues, roads, public squares and places in and for that part of such city included within the district laid out upon such map or plan, and which have not been thereafter re-established by law or relaid out or otherwise thereafter lawfully laid out and established."

Section 5 allowed a property owner affected by such a closing of the street to present a claim to the comptroller " within six years after the filing of such map." It was held that without notice to the occupant such a limitation was unconstitutional. (*Matter of City of New York* [*Grand Boulevard*], 212 N. Y. 538; *Matter of City of New York* [*Newton Avenue*], 219 id. 399.)

In *Matter of City of New York* (*Grand Boulevard*), Judge CARDOZO said of this six-year limitation in the Street Closing Act: " It does not require that owners be notified of the filing of the map by which their rights are to be extinguished. It does not confine itself to a provision that the filing of the map shall *ipso facto* work an appropriation of their interest in the land. * * * The statute, however, goes farther and

declares that the mere lapse of six years, following the filing of the map, shall, regardless of notice to the owners, bar their right to compensation. It does not avail them that they have remained in undisturbed possession of their lands and unchallenged enjoyment of appurtenant easements." (Pp. 543, 544.)

As has been shown, the map of the town survey commission had no such effect. It dedicated no new street and closed no existing street. The part of Stewart avenue here involved was closed when the city physically carried the curbs of Seventy-second and Seventy-third streets across its lines, thereby closing it to vehicles, and probably at the same time unburdening the petitioner's half of the appurtenant street bed from any public easement.

When the street is thus physically closed, the right to compensation accrues. The owner does not have to keep track of maps filed, but merely to keep informed of what is going on alongside his house.

In *Matter of City of New York (Newton Avenue) (supra)* a map filed in 1895 purported to discontinue the Albany post road. But it remained open and in use till August, 1914, when the post road was crossed by Two Hundred and Fifty-fourth street at so high a grade as to bar entrance to the post road. Promptly in 1915, after this physical invasion of their easements, the lot owners took proceedings. The limitation of the time within which to present a claim after such invasion, therefore, was not there presented for decision.

I conclude, therefore, that the map filed by the town survey commission in 1874 was not such a map as was contemplated in the Street Closing Act (Laws of 1895, chap. 1006). Further, that any remedy of the petitioner for compensation for the closing of Stewart avenue has been barred by the Statute of Limitations, which began to run at the time such street was closed. (*People ex rel. Chedsey* v. *City of New York*, 105 Misc. Rep. 119; *People ex rel. Nelson* v. *Marsh*, 82 App. Div. 571; affd., 178 N. Y. 618.) As this period before filing this claim exceeds fourteen years, it is unnecessary to decide whether the six-year (Code Civ. Proc. § 382), or the ten-year (Id. § 388) limitation applied.

I advise, therefore, that the order be reversed, with ten dollars

costs and disbursements, and the petition be denied, with fifty dollars costs.

JENKS, P. J., MILLS, BLACKMAR and KELLY, JJ., concur.

Order reversed on reargument, with ten dollars costs and disbursements, and petition denied, with fifty dollars costs.